UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>TS EMPLOYMENT, INC.,<br><br>                   Debtors.<br>JAMES FELTMAN, not individually but solely as chapter 11 trustee for TS Employment, Inc.,<br>                   Plaintiff,<br><br>   - against -<br><br>KOSSOFF & KOSSOFF LLP and IRWIN KOSSOFF,<br>                   Defendants. | Chapter 11<br><br>Case No. 15-10243-mg<br><br>Adv. Pro. No. 18-01649-mg<br><br>**NOTICE OF MOTION TO DISMISS**<br><br>Re: ECF No. 3 |

     PLEASE TAKE NOTICE that a hearing on the annexed motion to dismiss the Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6) will be held before the Honorable Martin Glenn in Room 523 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on February 11, 2019 at 10:00 a.m.

     PLEASE TAKE FURTHER NOTICE that objections to the motion must be served on the undersigned so as to be received by January 25, 2019 at 4:00 p.m.

| | |
|---|---|
| Dated: January 4, 2019<br>       New York, New York | STORCH AMINI PC<br><br>/s/ Jeffrey Chubak<br>Steven G. Storch<br>Jeffrey Chubak<br>140 East 45th Street, 25th Floor<br>New York, New York 10017<br>(212) 490-4100<br>sstorch@storchamini.com<br>jchubak@storchamini.com<br><br>*Attorneys for Defendants Kossoff & Kossoff LLP and Irwin Kossoff* |

Steven G. Storch
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
sstorch@storchamini.com
jchubak@storchamini.com

*Attorneys for Defendants Kossoff & Kossoff LLP and Irwin Kossoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TS EMPLOYMENT, INC.,<br><br>                     Debtors. | Chapter 11<br><br>Case No. 15-10243-mg |
| JAMES FELTMAN, not individually but solely as chapter 11 trustee for TS Employment, Inc.,<br>                     Plaintiff,<br><br>   - against -<br><br>KOSSOFF & KOSSOFF LLP and IRWIN KOSSOFF,<br>                     Defendants. | Adv. Pro. No. 18-01649-mg<br><br>**MOTION TO DISMISS**<br><br>Re: ECF No. 3 |

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ........................................................................................................................ 1

I. THE BANKRUPTCY CASE ......................................................................................... 1

II. THE ALLEGATIONS IN THE COMPLAINT............................................................. 2

    A. Services Rendered by Defendants to Cassera's Companies ................................. 2

    B. The PEO Agreement ............................................................................................. 3

    C. The TSE/Tri-State Agreement .............................................................................. 4

    D. Federal Payroll Tax Liabilities.............................................................................. 4

    E. Eve-of-Bankruptcy Journal Entries....................................................................... 5

III. THE TRUSTEE'S CLAIMS ........................................................................................... 6

IV. THE CASSERA/TRI-STATE ADVERSARY PROCEEDING.......................................... 7

ARGUMENT................................................................................................................................ 8

I. LEGAL STANDARD..................................................................................................... 8

II. THE TRUSTEE'S CLAIMS ARE BARRED BY THE DOCTRINE OF IN PARI DELICTO AND THE WAGONER RULE ..................................................................... 9

III. THE ADVERSE INTEREST EXCEPTION IS INAPPLICABLE ................................. 11

CONCLUSION............................................................................................................................ 12

CERTIFICATE OF SERVICE .....................................................................................................

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ............................................................................................. 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 8

*In re Bennett Funding Group, Inc.*,
   268 B.R. 708 (S.D.N.Y. 2001) ..................................................................................... 10

*In re Bennett Funding Group, Inc.*,
   336 F.3d 94 (2d Cir. 2003) ........................................................................................... 10

*In re Bernard L. Madoff Inv. Secs., LLC*,
   721 F.3d 54 (2d Cir. 2013) ........................................................................................... 11

*Bullmore v. Ernst & Young Cayman Is.*,
   20 Misc.3d 667 (Sup. Ct. N.Y. Co. 2008) ................................................................... 12

*In re Cal. TD Inv. LLC*,
   489 B.R. 124 (Bankr. C.D. Cal. 2013) ........................................................................ 11

*Concord Capital Mgmt., LLC v. Bank of America, N.A.*,
   102 A.D.3d 406 (1st Dep't 2013) ................................................................................ 10

*Concord Capital Mgmt., LLC v. Bank of America, N.A.*,
   21 N.Y.3d 851 (2013) .................................................................................................. 10

*Concord Capital Mgmt., LLC v. Fifth Third Bank*,
   No. 650478/2010, 2011 WL 10564345 (Sup. Ct. N.Y. Co. Dec. 1, 2011) ............ 9, 10, 12

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995) ......................................................................................... 11

*Kirschner v. KPMG LLP*,
   15 N.Y.3d 446 (2010) .................................................................................................. 10

*Kirschner v. KPMG, LLP*,
   626 F.3d 673 (2d Cir. 2010) ......................................................................................... 11

*In re Magnesium Corporation*,
   399 B.R. 722 (Bankr. S.D.N.Y. 2009) ......................................................................... 10

*In re Mediators, Inc.*,
　　105 F.3d 822 (2d Cir. 1997)............................................................................................. 9, 11

*Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*,
　　No. 11-cv-4362, 2012 WL 1890388 (S.D.N.Y. May 23, 2012) ................................................ 9

*Smith v. Local 819 I.B.T. Pension Plan*,
　　291 F.3d 236 (2d Cir. 2002)...................................................................................................... 8

*Rahl v. Bande*,
　　328 B.R. 387 (Bankr. S.D.N.Y. 2005) ...................................................................................... 9

*Ross v. Bolton*,
　　904 F.2d 819 (2d Cir. 1990)...................................................................................................... 9

*Shearson Lehman Hutton, Inc. v. Wagoner*,
　　944 F.2d 114 (2d Cir. 1991).................................................................................... 1, 9, 10, 11

*Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP*,
　　212 B.R. 34 (S.D.N.Y. 1997).................................................................................................. 11

**Rules**

Fed. R. Bankr. P. 9017 .................................................................................................................. 8

Fed. R. Civ. P. 8 ............................................................................................................................ 8

Fed. R. Civ. P. 9 ............................................................................................................................ 9

Fed. R. Civ. P. 12 ................................................................................................................... 1, 11

Fed. R. Evid. 201 .......................................................................................................................... 8

Defendants Kossoff & Kossoff LLP and Irwin Kossoff ("Kossoff," and together with Kossoff & Kossoff LLP, "Defendants") move to dismiss the Amended Complaint [ECF No. 3] ("Complaint") of Plaintiff James Feltman, as Chapter 11 Trustee ("Trustee") for TS Employment, Inc. ("TSE"), pursuant to Rule 12(b)(1) and 12(b)(6), and respectfully state:

## INTRODUCTION

1. The gravamen of the Complaint is that Defendants—an 80-year old retired accountant who has moved to Florida, and his firm located in Goshen, New York which was paid on an hourly basis—should be liable for conduct that helped TSE and its owner, Robert Cassera ("Cassera"), mask the extent of TSE's unpaid federal payroll tax obligations from 2011-14, resulting in TSE's accruing approximately $100 million in said obligations by the time it filed for bankruptcy in February 2015. The Complaint alleges said conduct enabled Tri-State Employment Service, Inc. ("Tri-State," and together with its subsidiaries, "Tri-State Group"), which Cassera also owned and which "dominated and controlled" TSE (Complaint ¶¶18, 27), to transfer "tens of millions of dollars" that TSE received under its PEO Agreement with Corporate Resources Services, Inc. ("CRS") to Tri-State Group, to the detriment of TSE and its creditors.

2. Under the doctrine of in pari delicto and the *Wagoner* rule, the Trustee cannot sue Defendants for engaging in the subject conduct, whether under accounting malpractice/negligence or fraud theories, because the law holds TSE, and the Trustee as its successor, responsible for the same.

## BACKGROUND

### I. THE BANKRUPTCY CASE

3. TSE filed a voluntary chapter 11 case on February 2, 2015, after discovering that it owed up to $100 million in unpaid withholding tax deposits to the IRS. (ECF No. 2, ¶5.)

4. On February 12, 2015, the Office of the U.S. Trustee moved to appoint a chapter 11 trustee (ECF No. 21), on the ground that the accrual of said liabilities beginning in the fourth quarter of 2013 "suggests, at a minimum, incompetence and gross mismanagement on the part of the Debtor's current management," then "led by Cassera." (*Id*. p.11; *see also id.* p.1.)

5. On February 20, 2015, the Court entered a consent order granting the motion and directing the appointment of a chapter 11 trustee. (ECF No. 31.)

6. Since that time, the Trustee has taken the position "there appears to have been a massive fraud involving the Debtor." (ECF No. 60-2, ¶10; *see also* ECF No. 93, ¶16.)

## II. THE ALLEGATIONS IN THE COMPLAINT

7. The Trustee commenced this adversary proceeding on October 5, 2018. The Complaint alleges the following:

### A. Services Rendered by Defendants to Cassera's Companies

8. Cassera owned 100% of the stock of both TSE and Tri-State, a staffing business he founded in 1993. (Complaint ¶¶14, 17.)

9. "Since at least 1995, Defendants have been providing outside accounting services to Tri-State Group entities and/or Cassera. After TSE was incorporated and began providing PEO services to CRS in 2011 [discussed below], Defendants expanded the scope of their work to provide outside accounting services to TSE as well." (*Id*. ¶36.)

10. "Defendants performed a wide range of accounting and related services for Tri-State and TSE, including performing many of their core financial reporting functions." (*Id*. ¶37.)

11. "Defendants had direct and unfettered access to Tri-State's and TSE's financial reporting systems, and directly made adjustments, ledger entries and journal entries" in the same. (*Id*. ¶38.)

12. "In addition, Defendants prepared all of the federal and state income, payroll, and other tax returns for both TSE and Tri-State." (*Id*. ¶39.)

13. "Kossoff was intimately involved in Tri-State's and Cassera's businesses. Kossoff and Cassera traveled together regularly by private jet from Florida to New York, where Tri-State and CRS were headquartered. They met frequently concerning Tri-State and Cassera's businesses, and Kossoff was regularly consulted about all financial matters involving Tri-State and Cassera's other businesses. Indeed, after TSE's massive unpaid tax liabilities were discovered it was Kossoff who made presentations on behalf of Cassera to CRS's board of directors."[1] (*Id*. ¶40.)

B. **The PEO Agreement**

14. After CRS went public in 2010, TSE agreed to provide "PEO" services to CRS, a public company that Cassera became the majority owner of, pursuant to a "<u>PEO Agreement,</u>" dated August 27, 2010. (Complaint ¶¶20, 24.)

15. The term "<u>PEO</u>" is defined as "professional employer organization" meaning "TSE was the co-employer of record for the hundreds of thousands of temporary or seasonal workers sourced by [CRS for its] customers, and was responsible for the payment of temporary worker's wages and payroll, remittance of withholdings, payment of employer taxes … and payment of workers' compensation insurance and expenses." (*Id*. ¶¶2, 24.)

16. "In exchange for its PEO services, TSE was entitled under the PEO Agreement to be reimbursed by CRS for all compensation paid to temporary workers, the employer's share of

---

[1] Kossoff also testified to having "attended a meeting, together with counsel for the Debtor [and] the IRS revenue agent assigned to collection of [TSE's] payroll taxes" "[i]n January 2015, shortly before the bankruptcy filing," in the declaration on which the Complaint is in large part premised. (ECF No. 99, ¶17.)

taxes, workers' compensation expenses and similar costs, plus an 'administrative fee' purportedly representing the cost of TSE's services and profit." (*Id*. ¶25.)

      C.      **The TSE/Tri-State Agreement**

17.      TSE had no employees or business of its own, and substantially all functions it agreed to perform under the PEO Agreement were performed by Tri-State. (*Id*. ¶¶27-35, 46.) Therefore "Tri-State and TSE entered into an agreement pursuant to which Tri-State charged an administrative fee to TSE in exchange for the services provided by Tri-State." (*Id*. ¶54.)

18.      On a near-daily basis funds paid to TSE under the PEO Agreement were transferred to Tri-State Group. (*Id*. ¶34.) "Cassera then used the funds for a variety of purposes, many unrelated to TSE or … CRS." (*Id*.) "Tri-State ensured that TSE's basic payroll obligations to … workers were met, and caused TSE's payroll accounts to be funded … But [as described below] beginning in 2013 at the latest, Tri-State Group entities began failing to remit large amounts to taxing authorities on account of TSE's payroll tax-related obligations, causing them to go unpaid." (*Id*. ¶35.)

19.      "As of December 31, 2014, as a result of … Tri-State's misuse of TSE's cash described [in the preceding paragraph], the TSE/Tri-State general ledger intercompany account reflected that the Tri-State Group entities owed TSE approximately $90 million. (*Id*. ¶56.)

      D.      **Federal Payroll Tax Liabilities**

20.      "Tri-State caused TSE to forgive or defer tens of millions of dollars of CRS obligations to TSE and to provide additional accommodations to CRS." (Complaint ¶41.) Specifically, the Complaint alleges that CRS owed TSE $11.4 million under the PEO Agreement at the close of CRS's first fiscal year (September 30, 2011), an amount that "was converted to a '<u>related loan payable</u>' on TSE's books as of October 1, 2011." (*Id*. ¶42.)

4

21. The related loan payable continued to grow, however. Twice during the 2011-12 fiscal year TSE agreed to accept CRS common stock in satisfaction of some portion of the same, but TSE "did not have capital or a source of liquidity to absorb deferral of payment of this receivable from CRS." (*Id.* ¶¶43-44.)

22. "By the end of 2013, TSE's books reflected that a massive $67 million unpaid federal payroll tax liability. Effective as of the end of 2013, Defendants recorded a year-end intercompany general ledger entry which eliminated the $67 million federal payroll tax liability from TSE's books, and caused the $67 million federal payroll tax liability to be reflected on Tri-State's books." (*Id.* ¶49.)

23. The Complaint alleges TSE's tax filings failed to reflect TSE's nonpayment of federal payroll taxes and instead indicated said taxes had been paid, thereby permitting TSE to defer recognition and payment of tax obligations. (*Id.* ¶¶50-51.)

24. "In late 2014, the 2013 year-end general ledger entry referenced … above was 'reversed' by Defendants, and the $67 million federal payroll tax liability 'reappeared.'" (*Id.* ¶52.) Coupled with federal payroll taxes that accrued in the interim, said tax obligations grew to approximately $100 million by the petition date. (*Id.*)

E. **Eve-of-Bankruptcy Journal Entries**

25. "On January 30 and 31, 2015, as TSE's bankruptcy case was being filed, Defendants made a series of large journal entries on TSE's general ledger … which they dated as of December 31, 2014 [which] had the effect of purporting to transform the larger intercompany balance owed by Tri-State [to TSE, $90 million as noted above] into a net liability to Tri-State owed by TSE." (Complaint ¶57.)

26. Prior to these entries having been made, TSE's books reflected TSE owed Tri-State $14.3 million in administrative fees for 2014. (*Id*. ¶60.) Said entries, however, "purported to debit the TSE/Tri-State intercompany account for tens of millions of dollars in additional administrative fees" not supported by TSE's books and records. (*Id*. ¶61.)

27. Additional, workers compensation related adjustments were made to further reduce the TSE/Tri-State intercompany account. Lumbermen's Underwriting Alliance had issued a high-deductible worker's compensation insurance policy that left Tri-State and TSE (the insureds) basically self-insured. (Complaint ¶65.) "TSE became liable to Lumbermen's for tens of millions of dollars in deductibles" for which it had not reserved. (*Id*. ¶¶66-67.) "Defendants made eve-of-bankruptcy journal entries on TSE's books that purported to debit the TSE/Tri-State intercompany account for tens of millions of dollars in workers' compensation related obligations going back to 2012." (*Id*. ¶69.) Such entries included debiting the intercompany account by $56.5 million "for cash and securities held in a collateral account that had been pledged to Lumbermen's." (*Id*. ¶71.)

### III. THE TRUSTEE'S CLAIMS

28. The gravamen of the Complaint is that Defendants should be liable for engaging in conduct that helped TSE hide the extent of its unpaid federal payroll tax obligations from 2011-14; specifically, the "masking of TSE's tax liabilities" by "'removing' these liabilities from TSE's books in 2013, then adding the liabilities back in late 2014" and submitting tax filings which had "incorrectly indicat[ed] that all of [TSE's] payroll taxes had been paid," in both cases in violation of accepted accounting standards. (Complaint ¶¶83-85, 89-91.)

29. In this regard the Complaint asserts two alternative claims. The first is an accounting malpractice/negligence claim (Count I) which attributes the subject conduct to negligence and breach of the duty of care. The second is a fraud claim (Count II) which states that

the subject conduct constitutes an "intentional or reckless" misrepresentation. The damages theory is that the subject conduct permitted TSE to stay in business longer than it otherwise would have, during which period it transferred "tens of millions of dollars to Tri-State Group entities and incur[ed] tens of millions of dollars in additional liabilities that remain unpaid today." (*Id*. ¶85; *see also id.* ¶¶91-92, 99-102.)

30. Both counts reference the eve-of-bankruptcy journal entries; however, the claims are not premised on said entries, as they did not artificially prolong TSE's life or deepen TSE's insolvency. Rather, with respect to the accounting malpractice/negligence claim, the Complaint provides "to the extent any of [said] entries [debiting the TSE/Tri-State intercompany account for tens of millions of dollars going back to 2012] reflected legitimate intercompany liabilities, Defendants' failure to cause these liabilities to be reflected on those liabilities, TSE books and records, financial statements, and tax returns in 2011, 2012, 2013, and 2014 violated recognized and accepted accounting standards." (*Id*. ¶¶86.) With respect to the fraud claim, the Complaint provides that either the subject entries are intentional or reckless misrepresentations, in which case they likewise are not actionable because they did not deepen TSE's insolvency, or Defendants intentionally or recklessly failed to record liabilities accurately from 2012-14. (*Id*. ¶95.) However, the Complaint does not allege that the eve-of-bankruptcy journal entries reflected legitimate intercompany liabilities or otherwise corrected a prior omission. Absent such an allegation, any claim based on said entries must fail because the entries did not deepen TSE's insolvency, having been made right before the case was filed.

## IV. THE CASSERA/TRI-STATE ADVERSARY PROCEEDING

31. On January 31, 2017, the Trustee commenced a separate adversary proceeding against Cassera and Tri-State Group, titled *Feltman v. Tri-State Employment Service, Inc., et al.*, No. 17-ap-1013.

7

32. The complaint in said proceeding ("Cassera/Tri-State Complaint") asserted Cassera breached his fiduciary duty to CRS by, inter alia, "failing to inform CRS's Board of Directors of TSE's mounting tax liability … and by taking actions … that benefited [himself] or the Tri-State Group to the … detriment of CRS [and] TSE and its creditors." (Cassera/Tri-State Complaint ¶¶102, 110.)[2]

33. By stipulation, filed February 19, 2018, the Trustee agreed to voluntarily dismiss all claims against Cassera and the corporate defendants.

34. Defendants respectfully request that the Court take judicial notice of the Cassera/Tri-State Complaint and stipulated dismissal pursuant to Federal Rule of Evidence 201, made applicable by Rule 9017.

## ARGUMENT

### I. LEGAL STANDARD

35. Pursuant to Rule 8(b), a complaint must include allegations plausibly showing that the plaintiff is entitled to relief. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). In addition, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (brackets and internal citation omitted).

---

[2] Counts IV-X of the Cassera/Tri-State Complaint seek to avoid transfers made to Tri-State Group and Cassera during the applicable avoidance period under preference, fraudulent transfer, unjust enrichment, and unlawful distribution to shareholder theories.

36. Plaintiff's claims must also satisfy Rule 9(b) pleading requirements, which requires that parties alleging fraud or mistake "state with particularity the circumstances constituting fraud or mistake." Rule 9(b) applies to fraud claims and claims that "sound in fraud," *Rombach v. Chang*, 335 F.3d 164, 171 (2d Cir. 2004), including the accounting malpractice/negligence claim that is based on the same allegations as the fraud claim. *E.g.*, *Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11-cv-4362, 2012 WL 1890388, at *8 (S.D.N.Y. May 23, 2012) ("When a breach of fiduciary duty is premised upon fraudulent misconduct, Rule 9(b) applies"); *Rahl v. Bande*, 328 B.R. 387, 412 (Bankr. S.D.N.Y. 2005) (same).

## II. THE TRUSTEE'S CLAIMS ARE BARRED BY THE DOCTRINE OF IN PARI DELICTO AND THE WAGONER RULE

37. The doctrine of in pari delicto prevents a party from suing others for a wrong in which the party participated or is deemed through imputation to have participated. *Ross v. Bolton*, 904 F.2d 819, 824 (2d Cir. 1990).

38. Under the *Wagoner* rule, the in pari delicto doctrine applies equally to successors to wrongdoers, including bankruptcy trustees who stand "in the shoes of the bankrupt corporation" and can only maintain those actions "that the corporation could have instituted prior to filing its petition for bankruptcy." *In re Mediators, Inc.*, 105 F.3d 822, 825-26 (2d Cir. 1997). Thus, "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991).

39. It is well established that under the *Wagoner* rule all "acts -- including fraudulent ones -- committed by corporate agents acting within the scope of their authority are presumptively imputed to their principals," and that the principals are bound by said conduct. *Concord Capital Management, LLC v. Fifth Third Bank*, No. 650478/2010, 2011 WL 10564345, at *7 (Sup. Ct.

9

N.Y. Co. Dec. 1, 2011), *aff'd*, *Concord Capital Management, LLC v. Bank of America, N.A.*, 102 A.D.3d 406 (1st Dep't 2013), *leave to appeal denied*, 21 N.Y.3d 851 (2013). *See also Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464-66 (2010) ("Agency law presumes imputation even where the agent acts less than admirably, exhibits poor business judgment, or commits fraud … [W]here conduct falls within the scope of the agents' authority, everything they know or do is imputed to the principals"); *In re Magnesium Corporation*, 399 B.R. 722, 761-62, 768-69 (Bankr. S.D.N.Y. 2009) ("*Wagoner* and its progeny, applying what is in substance a rule of agency law … impute the wrongful conduct of predecessor management to the corporation itself and then to the bankruptcy trustee … [I]mputed misconduct gives rise to an in pari delicto defense"); *In re Bennett Funding Group, Inc.*, 268 B.R. 708, 709 (S.D.N.Y. 2001), *aff'd*, 336 F.3d 94 (2d Cir. 2003) (same).

40. The rationale for this is that in deciding how to allocate a loss from a corporate wrongdoing—whether to the corporation or a third-party—it should be allocated to the corporation because the corporation had the authority to hire and control the wrongdoer. *Kirschner*, 15 N.Y.3d at 476-77 (proposal to allocate loss to third party "would allow the creditors and shareholders of the company that employs miscreant agents to enjoy the benefit of their misconduct without suffering the harm").

41. As noted above, the subject "wrong" here is masking TSE's federal payroll tax obligations by removing the liability from TSE's books in 2013 and submitting tax filings falsely indicating payroll taxes had been paid.[3] Both the accounting malpractice/negligence and fraud claims are premised on the foregoing conduct. They constitute a "single form of wrongdoing under

---

[3] The eve-of-bankruptcy journal entries did not artificially prolong TSE's life or deepen TSE's insolvency, as noted above. Nor does the Complaint allege the subject entries actually corrected a prior omission.

different names." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995). There can be little doubt that the subject conduct—adjusting journal entries in TSE's and Tri-State's financial reporting systems and handling their tax filings—fell within the scope of Defendants' authority. The Trustee alleges that Defendants had been performing those functions for TSE since its formation and for Tri-State Group at least since 1995. (Complaint ¶¶36-40.) The claims are accordingly barred.

42. Courts regularly apply the *Wagoner* rule at the pleading stage to bar trustees from asserting claims under Rules 12(b)(1) and 12(b)(6). *E.g.*, *Hirsch*, 72 F.3d at 1085 (affirming dismissal under Rule 12(b)(1)); *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP*, 212 B.R. 34, 35 (S.D.N.Y. 1997) (granting motion to dismiss under Rule 12(b)(1)); *In re Bernard L. Madoff Inv. Secs., LLC*, 721 F.3d 54, 64 (2d Cir. 2013) ("<u>BLMIS</u>") ("Early resolution is appropriate where (as here) the outcome is plain on the face of the pleadings"); *Kirschner v. KPMG, LLP*, 626 F.3d 673, 674 (2d Cir. 2010); *Mediators*, 105 F.3d at 825-27. This Court should likewise dismiss the Trustee's claims.

### III. THE ADVERSE INTEREST EXCEPTION IS INAPPLICABLE

43. The adverse interest exception to imputation pursuant to the *Wagoner* rule applies only when the guilty agent has "totally abandoned" the interests of the corporation. *Mediators*, 105 F.3d at 827. It has been described as the "most narrow of exceptions … reserved for cases of outright theft or looting or embezzlement," and allegations of self-dealing are required before the exception can be applied. *BLMIS*, 721 F.3d at 64. *See also In re Cal. TD Inv. LLC*, 489 B.R. 124, 130 (Bankr. C.D. Cal. 2013) (describing New York's requirement "that the agent has 'totally abandoned' the principal's interests" as a "heightened standard of self-dealing" as compared to California law).

44. As long as the corporation received some benefit from the subject misconduct, the adverse interest exception is inapplicable. *E.g.*, *Concord Capital Mgmt..*, 2011 WL 10564345, at *7 ("if a fraud brings money into the company's own coffers, the adverse interest is unavailable, irrespective of whether the benefit to the agent is great and the benefit to the company is small"); *Bullmore v. Ernst & Young Cayman Is.*, 20 Misc.3d 667, 672 (Sup. Ct. N.Y. Co. 2008) ("where a corporation benefits to any extent from the alleged wrongful acts of its agents, the agents cannot be said to have 'totally' abandoned the corporation's interests").

45. The Trustee does not allege this exception applies, nor could it having alleged TSE prolonged its life as a result of the subject conduct, for the benefit of its alter ego Tri-State and its owner Cassera and to the detriment of TSE's creditors. Nor has the Trustee pled any self-dealing on Defendants' part.

## **CONCLUSION**

The Complaint should be dismissed with prejudice, and Defendants should be granted such other and further relief as the Court deems just and proper.

Dated: January 4, 2019
      New York, New York

Respectfully submitted,

/s/ Jeffrey Chubak
Steven G. Storch
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
sstorch@storchamini.com
jchubak@storchamini.com

*Attorneys for Defendants Kossoff & Kossoff LLP and Irwin Kossoff*

# CERTIFICATE OF SERVICE

      Jeffrey Chubak hereby certifies that on January 4, 2019, he served a copy of the foregoing **Notice of Motion to Dismiss** and **Motion to Dismiss** on counsel of record for the Trustee by first class mail and e-mail at the following addresses:

      Vincent E. Lazar                            Carl N. Wedoff
      Jenner & Block LLP                    Jenner & Block LLP
      353 North Clark Street             919 Third Avenue
      Chicago, Illinois 60654            New York, New York 10022
      vlazar@jenner.com                    cwedoff@jenner.com

Dated: January 4, 2019

                                                         /s/ Jeffrey Chubak