Steven G. Storch
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
sstorch@storchamini.com
jchubak@storchamini.com

*Attorneys for Defendants Kossoff & Kossoff
LLP and Irwin Kossoff*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>TS EMPLOYMENT, INC.,<br><br>               Debtor. | Chapter 11<br><br>Case No. 15-10243-mg |
| JAMES FELTMAN, not individually but solely as chapter 11 trustee for TS Employment, Inc.,<br><br>               Plaintiff,<br><br>- against -<br><br>KOSSOFF & KOSSOFF LLP and IRWIN KOSSOFF,<br><br>               Defendants. | Adv. Pro. No. 18-01649-mg<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Re: ECF Nos. 3, 8, 10 |

# TABLE OF CONTENTS

                                                                                                                     **Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.     THE TRUSTEE'S CLAIMS ARE BARRED BY THE DOCTRINE OF IN PARI DELICTO AND THE WAGONER RULE BECAUSE DEFENDANTS ARE NOT INSIDERS............................................................................................................... 2

        A.     The Complaint Contradicts the Trustee's Argument that Defendants were *de Facto* Officers .................................................................................................. 2

        B.     The Complaint Does Not Plausibly Allege Insider Status .................................... 3

                1.     Plausibility Standard ................................................................................. 3

                2.     Insider Status............................................................................................. 3

II.    THE ADVERSE INTEREST EXCEPTION IS INAPPLICABLE ................................. 6

        A.     TSE Benefitted from the Subject Conduct............................................................. 6

        B.     TSE Had No Innocent Shareholders or Managers ................................................. 7

CONCLUSION..................................................................................................................... 9

CERTIFICATE OF SERVICE ..............................................................................................

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Alphastar Insurance Group Ltd.*,
 383 B.R. 231 (Bankr. S.D.N.Y. 2008) .................................................................................. 7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................................. 3

*In re Bernard L. Madoff Inv. Secs. LLC*,
 458 B.R. 87 (Bankr. S.D.N.Y. 2011) ................................................................................ 3, 4

*Center v. Hampton Affiliates*,
 66 N.Y.2d 782 (1985) .......................................................................................................... 6

*Calderon v. Total Wealth Mgm't, Inc.*,
 No. 15-cv-1632, 2017 WL 6272096 (S.D. Cal. Jan. 19, 2017) ............................................ 5

*In re KDI Holdings, Inc.*,
 277 B.R. 518 (Bankr. S.D.N.Y. 1999) .............................................................................. 3, 4

*In re ICP Strategic Credit Income Fund Ltd.*,
 568 B.R. 596 (S.D.N.Y. 2017) ............................................................................................. 7

*In re ICP Strategic Credit Income Fund Ltd.*,
 730 Fed. App'x 78 (2d Cir. 2018) ........................................................................................ 7

*In re IDI Const. Co.*,
 345 B.R. 60 (Bankr. S.D.N.Y. 2006) ................................................................................ 3, 4

*Kirschner v. KPMG LLP*,
 15 N.Y.3d 446 (2010) ...................................................................................................... 6, 7

*In re Lihua Int'l, Inc. Secs. Litig.*,
 No. 14-cv-5037, 2016 WL 1312104 (S.D.N.Y. Mar. 31, 2016) ........................................... 7

*In re PetroChina Co. Ltd. Secs. Litig.*,
 120 F. Supp. 3d 340 (S.D.N.Y. 2015) .................................................................................. 7

*In re PHS Group Inc.*,
 581 B.R. 16 (Bankr. E.D.N.Y. 2018) ................................................................................ 3, 4

*In re Refco Secs. Litig.*,
 No. 07-md-1902, 2010 WL 6549830 (S.D.N.Y. Dec. 6, 2010) ........................................... 3

*Stream SICAV v. Wang*,
   989 F. Supp. 2d 264 (S.D.N.Y. 2013) ................................................................................. 7

*Vanacore v. Vanco Sales LLC*,
   No. 16-cv-1969, 2017 WL 2790549 (S.D.N.Y. June 27, 2017) ............................................. 9

*Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.*,
   212 B.R. 34 (S.D.N.Y. 1997) ............................................................................................ 7, 8

Defendant respectfully submit this reply in support of their motion to dismiss, filed January 4, 2019 (ECF No. 8) (the "Motion").[1]

**INTRODUCTION**

1. By the Motion, Defendants argued that the Complaint should be dismissed under the doctrine of in pari delicto and the *Wagoner* rule, because by it the Trustee has alleged that Defendants—an 80-year old retired account who lives in Florida, and his former firm located in Goshen, New York—should be held liable, under accounting malpractice/negligence and fraud theories, for conduct that helped TSE and Cassera mask the extent of TSE's unpaid federal payroll tax obligations.[2] (*E.g.*, Motion ¶1.)

2. The Trustee opposes the Motion on the ground that the *Wagoner* rule is inapplicable because Defendants were insiders of TSE by virtue of the degree of control that they exercised over the corporation ("TSE's *de facto* chief financial officer, controller, and treasurer, Opposition ¶¶2, 4, 9, 17, 24-25, citing Compl. ¶¶36-39, 69, 71), or alternatively, on the ground that the adverse interest exception to the *Wagoner* rule applies.

3. The former argument fails because the Trustee specifically alleged that Cassera owned and controlled TSE (Compl. ¶¶14, 28), and Defendants' alleged insider status cannot plausibly be inferred from the above-cited Paragraphs of the Complaint. The latter argument fails

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

[2] The claims asserted herein are not covered by insurance. The professional liability insurer of Kossoff, Silverstein, Cottone & Mulshine CPA's, LLP (fka Kossoff & Kossoff LLP) for the period June 1, 2017-June 1, 2018 (the Trustee's demand letter was dated May 14, 2018) denied coverage on the grounds that, inter alia, Kossoff was aware of conduct that he could have reasonably foreseen would serve as the basis for the Complaint prior to the above-referenced policy period, and subpoenas served on him prior to said period constituted independent claims under the policy. The firm's prior insurer denied coverage on the ground that no claim was made during the policy period.

because, as a matter of law, the adverse interest exception is inapplicable where, as here, the subject conduct is alleged to have enabled the corporation to survive longer than it otherwise would have, and its sole shareholder and manager (Cassera) is alleged to have participated in and benefitted from the subject conduct.

## ARGUMENT

**I. THE TRUSTEE'S CLAIMS ARE BARRED BY THE DOCTRINE OF IN PARI DELICTO AND THE WAGONER RULE BECAUSE DEFENDANTS ARE NOT INSIDERS**

4. The Complaint does not allege that Defendants were insiders of TSE. Indeed, it does not even use the term "insider." By the Opposition, and in response to the Motion, the Trustee now takes the position Defendants were "non-statutory insiders" (*de facto* officers) by virtue of the degree of control they are alleged to have exercised over TSE.[3] That argument fails for reasons set forth below.

**A. The Complaint Contradicts the Trustee's Argument that Defendants were *de Facto* Officers**

5. The Trustee's claim that Defendants were *de facto* officers of TSE (Opposition ¶¶2, 4, 9, 17) is contradicted by the allegation that "Officers of Tri-State acted as *de facto* management for TSE, exerting total control over TSE's operations." (Compl. ¶28.) The referenced "Officers of Tri-State" is in fact just Cassera, which the Complaint alleges was Tri-State's sole owner, and president and director at all relevant times. (*Id*. ¶17.) No other officers of Tri-State are referenced in the Complaint, which also alleges that "TSE never had any board meetings at which officers were appointed," Cassera "held himself out as TSE's president," and Cassera used TSE's

---

[3] The Trustee defines "insider" for *Wagoner* rule purposes by reference to the Bankruptcy Code definition. (Opposition ¶22.) The Bankruptcy Code definition is inapplicable as the Complaint asserts state law causes of action. The end result is the same, however, as both standards consider the degree of control exercised by the alleged insider.

2

funds "for a variety of purposes, many unrelated to TSE." (*Id.* ¶¶14, 28, 34; *see also* ¶21, *infra*, quoting Cassera/Tri-State Compl.)

### B. The Complaint Does Not Plausibly Allege Insider Status

#### 1. Plausibility Standard

6. To survive a motion to dismiss, the claims asserted must be plausible. By the Opposition the Trustee admits that his claims are only plausible if Defendants are insiders, or the adverse interest exception applies (discussed below). To plausibly allege insider status, the Trustee was required to plead "factual content that allows the court to draw the reasonable inference" that Defendants qualify as such. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant is liable [*i.e.*, is an insider]. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. Determining plausibility "requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

#### 2. Insider Status

7. "In the specific context of *Wagoner* and *in pari delicto*, courts have defined an 'insider' as [including] one that … in some … way control[s] the corporation." *In re PHS Group Inc.*, 581 B.R. 16, 31 (Bankr. E.D.N.Y. 2018) (citing *In re Refco Secs. Litig.*, No. 07-md-1902, 2010 WL 6549830, at *16, *31 (S.D.N.Y. Dec. 6, 2010)).[4]

---

[4] *PHS* quoted *In re Bernard L. Madoff Inv. Secs. LLC*, 458 B.R. 87, 125 (Bankr. S.D.N.Y. 2011) for the proposition that "[e]ven a third-party professional, typically the quintessential outsider, may surrender an *in pari delicto* defense where it exerts sufficient domination and control over the guilty corporation to render itself an insider." *Madoff*, in turn, cited *In re KDI Holdings, Inc.*, 277 B.R. 518 (Bankr. S.D.N.Y. 1999) and *In re IDI Const. Co.*, 345 B.R. 60 (Bankr. S.D.N.Y. 2006) for this proposition. None of the foregoing decisions, however, involved an actual, outside professional. *PHS* concerned the founder, and former owner, of the debtor's parent (the debtor was the parent's largest subsidiary), who continued to work out of the debtor's offices after

3

8. *PHS*, relied on heavily by the Trustee, applied a "totality of the circumstances" test in determining if a defendant is an insider by virtue of his or her control over the corporation, that considered the following factors: "(1) the close relationship between the debtor and [defendant]; (2) the degree of [defendant's] involvement in the debtor's affairs …; (3) whether the defendant had opportunities to self-deal …; and (4) whether the defendant holds or held a controlling interest in the debtor corporation." *Id*. at 33 (citations omitted).

9. It is undisputed that, unlike in *PHS*, the third and fourth factors weigh against a determination that Defendants were insiders. No self-dealing is alleged, nor are Defendants alleged to have held any interest in TSE, let alone a controlling one.

10. As to the first and second factors, the allegations of the Complaint cited by the Trustee for the proposition that Defendants are insiders (Opposition ¶4) do not support a plausible inference that Defendants had the requisite degree of control ("domination" of TSE, under *Madoff* and *PHS*). The subject allegations are:

> 36. … After TSE was incorporated and began providing PEO services to CRS in 2011, Defendants expanded the scope of their work to provide outside accounting services to TSE as well.
>
> 37. Defendants performed a wide range of accounting and related services for Tri-State and TSE, including performing many of their core financial reporting functions.

---

divesting his ownership interest, and whose son maintained a formal title and role with the debtor; *Madoff* concerned Bernard Madoff's sons Mark and Andrew ("Co-Directors of Trading" and controllers and directors of a UK affiliate), Bernard's brother Peter ("Senior Managing Director and Chief Compliance Officer"), and Peter's daughter Shana ("in-house Counsel and Compliance Director"); *KDI* concerned the debtor's lender and its principal who so dominated and controlled the debtor that they were considered fiduciaries; and *IDI* concerned a "consultant" who was actually the debtor's "principal." Defendants are not aware of any action in which a plaintiff's claim premised on an allegation that an "outside accountant" (Compl. ¶36) was in fact an insider survived a motion to dismiss.

> 38. Defendants had direct and unfettered access to Tri-State's direct and TSE's financial reporting systems, and directly made adjustments, ledger entries and journal entries in [said] systems.
>
> 39. In addition, Defendants prepared all of the federal and state income, payroll, and other tax returns for both TSE and Tri-State …
>
> 69. Defendants made eve-of-bankruptcy journal entries on TSE's books that purported to debit the TSE/Tri-State intercompany account for tens of millions of dollars in workers' compensation obligations dating back to 2012. Even though Defendants controlled and maintained TSE's books and records for TSE's entire existence, they had never previously caused these purported intercompany liabilities to Tri-State to be reflected on TSE's books, TSE's financial statements, or TSE's tax returns.
>
> 71. The largest eve-of-bankruptcy journal entry made by Defendants purported to debit the TSE/Tri-State intercompany account by $56,533,828 for cash and securities held in a collateral account that had been pledged to Lumbermen's. Even though Defendants controlled and maintained TSE's books and records for TSE's entire existence, they had never previously caused any such intercompany obligation to be reflected on TSE's books or financial statements

11. The allegations in Paragraphs 36-39 would apply to most companies' financial and tax accountants, and so they do not plausibly allege insider status.

12. The allegation in Paragraphs 69 and 71 that "Defendants controlled and maintained TSE's books and records" is likewise insufficient to plausibly allege insider status. *E.g.*, *Calderon v. Total Wealth Mgm't, Inc.*, No. 15-cv-1632, 2017 WL 6272096, at *5 (S.D. Cal. Jan. 19, 2017) (complaint alleged accountant for debtor Total Wealth Management (TWM) had "control over TWM's financial books and records" and "managed the financial records" in furtherance of a fraud; court held "[n]one of these facts leads to a reasonabl[e] inference that [accountant] exerted control over TWM" and concluded that the plaintiffs had not plausibly alleged the accountant was an insider, and granted his motion to dismiss).

13. Nor does Paragraph 40 of the Complaint, alleging that "Kossoff and Cassera traveled together regularly by private jet from Florida to New York [and] met frequently concerning Tri-State's and Cassera's businesses," referenced in Opposition ¶2, plausibly allege insider status. Kossoff and Cassera are both Florida residents. (Compl. ¶16; Cassera/Tri-State Compl. ¶32.) It accordingly makes sense for them to have traveled together for business. This allegation does not speak to domination or control of TSE.

14. Lastly, the Complaint does not plausibly allege that Defendants exercised the requisite degree of control over TSE because, as noted above, it alleges that Cassera exerted "total control" over TSE's operations. (Compl. ¶28.)

## II. THE ADVERSE INTEREST EXCEPTION IS INAPPLICABLE

### A. TSE Benefitted from the Subject Conduct

15. The Court of Appeals has held that the adverse interest exception applies where the agent "totally abandoned his principal's interest" and is "acting entirely for his own or another's purposes." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 468 (2010) (quoting *Center v. Hampton Affiliates*, 66 N.Y.2d 782, 784-85 (1985)).

16. An agent does not "totally abandon" its principal where the principal benefits from the agent's conduct. (Motion ¶44.) Defendants argued the adverse interest exception does not apply because the Trustee admitted that Defendants' conducted benefited TSE by prolonging its life. (*Id*. ¶45.)

17. The Trustee's response is that prolonging TSE's life "did not benefit TSE [since it] hid the fact that TSE was insolvent … thereby causing TSE and its creditors to suffer tens of millions of dollars in avoidable damages while giving Tri-State and Cassera continued access to TSE cash." (Opposition ¶29.)

18. The Trustee cites no authority for this position, which runs contrary to precedential authority. "In *Kirschner*, the Court of Appeals determined that simply keeping a business alive was enough of a benefit to defeat the adverse interest exception." *In re ICP Strategic Credit Income Fund Ltd.*, 568 B.R. 596, 611 (S.D.N.Y. 2017), *aff'd*, 730 Fed. App'x 78 (2d Cir. 2018) (citing *Kirschner*, 15 N.Y.3d at 468, which held "[s]o long as the corporate wrongdoer's fraudulent conduct enables the business to survive [the adverse interest exception] is not met"). *See also In re Lihua Int'l, Inc. Secs. Litig.*, No. 14-cv-5037, 2016 WL 1312104, at *16-17 (S.D.N.Y. Mar. 31, 2016) (citing *In re PetroChina Co. Ltd. Secs. Litig.*, 120 F. Supp. 3d 340, 362 (S.D.N.Y. 2015) and *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 277 (S.D.N.Y. 2013)) (same).

### B. TSE Had No Innocent Shareholders or Managers

19. The Trustee argues that the adverse interest exception is inapplicable because the Complaint alleges that Defendants' conduct benefitted Tri-State and Cassera (*i.e.*, they qualify as "another" under the standard articulated by the Court of Appeals and quoted in ¶15, *supra*).[5] (Opposition ¶28.)

20. This argument fails because "the adverse interest exception remains inapplicable unless there is at least one 'innocent' decision maker among management or the shareholders who could have stopped" the subject conduct. *In re Food Mgm't Group, LLC*, 380 B.R. 677, 697 (Bankr. S.D.N.Y. 2008) (citations omitted) (Glenn, J.); *In re Alphastar Ins. Group Ltd.*, 383 B.R. 231, 273 (Bankr. S.D.N.Y. 2008) (same). *See also Wechsler v. Squadron, Ellenoff, Plesent &*

---

[5] The Trustee alleged herein that "TSE Was Dominated by Tri-State" (Section heading preceding Compl. ¶27), and in the Cassera/Tri-State Complaint that Tri-State was TSE's alter ego (Cassera/Tri-State Compl. ¶¶6, 8, Section heading preceding ¶48, Count III). This implies Tri-State is <u>not</u> "another" under the above-described standard. The Trustee's response is that whether the entities are alter egos is not appropriately decided on a motion to dismiss (Opposition ¶28), notwithstanding his having admitted as much.

7

*Sheinfeld, L.L.P.*, 212 B.R. 34, 36-37 (S.D.N.Y. 1997) ("*Wagoner* rule … applies where all relevant shareholders and/or decisionmakers are involved in the fraud," and dismissing complaint for failure to allege the existence of at least one innocent member of management who could have stopped the fraud).

21. Cassera is not innocent. The Trustee alleges that Defendants' conduct was designed to, and in fact did, give Cassera access to significant amounts of TSE's cash which he used "for a variety of purposes, many unrelated to TSE or the CRS Debtors" (Compl. ¶34), to the detriment of TSE's creditors. *See also* Cassera/Tri-State Compl., a true copy of which is annexed hereto as <u>Exhibit 1</u> (without exhibits) ¶60 (same), ¶63 ("proceeds … were not used for the benefit of TSE, and instead were … used [to satisfy] Tri-State Group tax liabilities that had gone unpaid, as well as for construction, restaurant, and other businesses owned by Robert Cassera"), ¶115 ("Tri-State used TSE's corporate form … as a way to funnel cash to itself, its subsidiaries and other Robert Cassera-owned businesses").

22. The Trustee further alleged Cassera was TSE's sole shareholder and president and that there was no other management. (Compl. ¶¶14, 28.)

## CONCLUSION

The Complaint should be dismissed. The Trustee has not requested leave to amend to address deficiencies identified by Defendants, and said deficiencies are not curable in any event. Dismissal should accordingly be with prejudice. *E.g.*, *Vanacore v. Vanco Sales LLC*, No. 16-cv-1969, 2017 WL 2790549, at *5 (S.D.N.Y. June 27, 2017).

Dated: February 4, 2019
      New York, New York

Respectfully submitted,

/s/ Jeffrey Chubak
Steven G. Storch
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
sstorch@storchamini.com
jchubak@storchamini.com

*Attorneys for Defendants Kossoff & Kossoff LLP and Irwin Kossoff*

## CERTIFICATE OF SERVICE

Jeffrey Chubak certifies under penalty of perjury that on February 4, 2019 he served a copy of the foregoing **Reply in Support of Motion to Dismiss**, together with Exhibit 1 thereto, on Vincent Lazar and Carl Wedoff, both counsel for the Trustee, by e-mail at the following addresses: vlazar@jenner.com; cwedoff@jenner.com.

Dated: February 4, 2019

/s/ Jeffrey Chubak