**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br><br>TS EMPLOYMENT, INC.,<br><br>Debtor. | **FOR PUBLICATION**<br><br>Case No. 15-10243 (MG)<br>Chapter 11 |
| JAMES S. FELTMAN, not individually but solely as chapter 11 trustee for TS Employment, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>KOSSOFF & KOSSOFF LLP and IRWIN KOSSOFF,<br><br>Defendants. | Adv. Proc. No.  18-1649 (MG) |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO AMEND

*A P P E A R A N C E S:*

JENNER & BLOCK LLP
*Attorneys for Plaintiff*
919 Third Avenue
New York, NY 10022
By:    Vincent E. Lazar, Esq.
        Richard Levin, Esq.
        Carl N. Wedoff, Esq.

STORCH AMINI PC
*Attorneys for Defendants*
140 East 45th Street, 25th Floor
New York, New York 10017
By:    Steven G. Storch, Esq.
        Jeffrey Chubak, Esq.

1

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion ("Motion," ECF Doc. # 8), filed on behalf of

Kossoff & Kossoff LLP and its principal Irwin Kossoff (collectively, "Defendants"), to dismiss

the amended complaint ("Complaint," ECF Doc. # 3). James S. Feltman (the "Trustee") filed an

opposition to the Motion ("Opposition," ECF Doc. # 10) and Defendants filed a reply. ("Reply,"

ECF Doc. # 12.) For the reasons explained below, the Motion is **GRANTED** without prejudice

and with leave to amend.

## I.    BACKGROUND

This adversary proceeding was commenced by the Chapter 11 Trustee of TS

Employment, Inc.'s (TSE) against TSE's former accountants. Because of their conduct, TSE

and its creditors allegedly suffered more than $100 million in losses before TSE filed for

bankruptcy protection in February 2015. (Compl. ¶ 1.)

Until its bankruptcy, TSE served as the professional employer organization ("PEO") for

Corporate Resource Services, Inc. ("CRS") and its subsidiaries (the "CRS Subsidiaries" and,

together with CRS, the "CRS Debtors"). The CRS Debtors were publicly traded companies. As

the PEO, TSE was the employer of record for hundreds of thousands of temporary workers

supplied under the CRS Debtors' contracts with their customers. (*Id.* ¶ 2.)

CRS experienced dramatic growth from 2010 to 2015 by offering its customers

competitive pricing and financing options. CRS's ability to rapidly expand its business largely

depended on purported financial accommodations made by TSE, including the forgiveness or

deferral of more than $70 million owed to TSE under its PEO agreement with CRS. (*Id.* ¶ 3.)

TSE never had the capital or liquidity needed to make financial accommodations to CRS.

TSE "financed" its accommodations to CRS by failing to pay federal employment taxes for TSE

2

employees that were supplied to CRS customers.  Moreover, most of TSE's funds were commingled in the accounts of its affiliate, Tri-State Employment Service, Inc. ("Tri-State" and collectively with its wholly-owned subsidiaries, "Tri- State Group"), where tens of millions of dollars were used for purposes unrelated to TSE.  As a result, TSE ultimately failed to pay more than $100 million (exclusive of interest and penalties) in federal employment tax obligations, as well as other non-tax obligations.  (*Id.* ¶ 4.)

Defendants acted as TSE's accountants since its incorporation in 2010.  They kept TSE's books and records, prepared its financial statements, prepared dozens of tax returns, and allegedly had direct and unfettered input and access to the financial reporting systems.  (*Id.* ¶ 5.) Since 2011, TSE was insolvent and engaged in an unsustainable and under-capitalized business. Defendants' actions hid this reality from the outside world, thus permitting TSE to continue to amass unpaid liabilities while its corporate life was wrongfully prolonged.  (*Id.* ¶ 6.)  The Trustee seeks to recover from Defendants more than $100 million in losses that allegedly would not have occurred had Defendants provided competent accounting services to TSE.  (*Id.* ¶ 8.)

The Complaint asserts two sets of claims.  The first count is an accounting malpractice/ negligence claim, alleging that the losses were due to Defendants' negligence and breach of the duty of care.  The second count is a fraud claim, alleging that Defendants' misconduct involved an "intentional or reckless" misrepresentation.  During the period covered by the Complaint, TSE allegedly transferred "tens of millions of dollars to Tri-State Group entities and incur[red] tens of millions of dollars in additional liabilities that remain unpaid today."  (*Id.* ¶¶ 73–102.)

Defendants argue that the Complaint should be dismissed under the doctrine of *in pari delicto* and the *Wagoner* rule, because the Trustee alleges that the Defendants—an 80-year old retired accountant who lives in Florida and his former firm located in Goshen, New York—

should be held liable, under accounting malpractice/negligence and fraud theories, for conduct

that helped TSE and Robert Cassera ("Cassera") mask the extent of TSE's unpaid federal payroll

tax obligations.  (Motion ¶ 1.)  Cassera owned the majority of CRS's stock and 100% of TSE's

stock.  Cassera also owned 100% of Tri-State Employment Service, Inc.  Cassera is the alleged

mastermind of the CRS Debtors massive fraud.

## II.    LEGAL STANDARD

### A.    Dismissal Under Fed. R. Civ. Pro. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a

complaint need only allege "enough facts to state a claim for relief that is plausible on its face."

*Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (emphasis removed)).  "Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation

marks omitted).  Plausibility "is not akin to a probability requirement," but rather requires "more

than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation and internal

quotation marks omitted).  "The question in a Rule 12 motion to dismiss is 'not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims.'"  *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 320 (S.D.N.Y. 2015) (citing

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012)).

Courts use a two-pronged approach when considering a motion to dismiss.  *Pension*

*Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013)

(quoting *Iqbal*, 556 U.S. at 678–79); *McHale v. Citibank, N.A. (In re the 1031 Tax Grp., LLC)*,

420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009).  First, the court must accept all factual

4

allegations in the complaint as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678). Second, the court must determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). A complaint that pleads only facts that are "merely consistent with" a defendant's liability does not meet the plausibility requirement. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

**B.    The *Wagoner* Rule and *In Pari Delicto***

The *Wagoner* rule is a prudential standing rule first articulated by the Second Circuit in 1991. *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 86–87 (2d Cir. 2000) (implicitly linking the *Wagoner* rule to prudential standing). In *Wagoner,* the court stated that "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover

against the third party for the damage." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991).

Since *Wagoner,* courts in this Circuit have consistently held that bankrupt corporations and trustees standing in the shoes of the bankrupt corporations lack standing to assert claims against third parties for assisting in defrauding the company where corporate management conducted the alleged fraud. *See Bankruptcy Services, Inc. v. Ernst & Young (In re CBI Holding Co.),*529 F.3d 432, 447 (2d Cir. 2008) ("*CBI* ") (quoting *Wagoner,* 944 F.2d at 120); *Breeden v. Kirkpatrick & Lockhart LLP (In re B*ennett *Funding Group, Inc.),* 336 F.3d 94, 99–100 (2d Cir. 2003); *Wight,* 219 F.3d at 86–87 ("Because management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the *Wagoner* rule bars a trustee from suing to recover for a wrong that he himself essentially took part in."); *Cobalt Multifamily Investors I, LLC v. Shapiro*, 2009 WL 2058530, at *3 (S.D.N.Y. July 15, 2009).

*In pari delicto,* on the other hand, is an equitable defense to liability. *Food Holdings Ltd. v. Bank of America Corp. (In re Parmalat Sec. Litig.)*, 477 F. Supp. 2d 602, 609 n.45 (S.D.N.Y. 2007) (finding the doctrines "quite similar" but acknowledging distinctions). The doctrine is a state law equitable defense similar to the unclean hands doctrine. *Grubin v. Rattet (In re Food Mgmt.Group, LLC),* 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008). *In pari delicto* is grounded in the equitable concept that "a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl,* 486 U.S. 622, 632 (1988). The doctrine exists because, as a matter of equity, courts should not help plaintiffs profit from their wrongdoings. *Ross v. Bolton,* 904 F.2d 819, 824 (2d Cir. 1990). For the doctrine to apply, "[i]t is not enough that both parties are at fault, or *in delicto*—they must be equally at fault, or *in pari delicto.*" *Grumman Olson Indus. v. McConnell (In re Grumman Olson Indus., Inc.),* 329 B.R. 411, 424 n.5 (Bankr. S.D.N.Y. 2005).

The two concepts are similar and are both grounded in common law agency principles. *Wight,* 219 F. 3d at 86 (noting that the *Wagoner* rule is derived from common law agency principles); *Kirschner v. Grant Thornton LLP*, 2009 WL 1286326, at \*5 n.13 (S.D.N.Y. Apr. 14, 2009) (acknowledging that the *Wagoner* rule and the *in pari delicto* doctrines are similar); *Food Mgmt.,* 380 B.R. at 693 (noting that agency principles underlie both the *in pari delicto* doctrine and the *Wagoner* rule).

The parties here do not distinguish between the *in pari delicto* doctrine and the *Wagoner* rule in their filings. The Court will analyze below the parties' arguments under the *Wagoner* rule and two of its exceptions—the non-statutory insider exception and the adverse interest exception.

## III.    DISCUSSION

### A.    The *Wagoner* Rule Applies to Trustee's Claims

A bankruptcy "trustee stands in the shoes of the bankrupt corporation." *CBI,* 529 F.3d at 447 (quoting *Wagoner,* 944 F.2d at 120). A trustee takes title to the corporation's legal claims, which remain subject to all defenses available before bankruptcy. *Food Mgmt.,* 380 B.R. at 693–94. Thus, any wrongdoing imputed to a company under a theory of agency also taints a trustee's claims. Imputation of wrongdoing to a corporation and later to a trustee is the rationale for the *Wagoner* rule. "Because management's misconduct is imputed to a corporation, and because a trustee stands in the shoes of the corporation, the *Wagoner* rule bars a trustee from suing to recover for a wrong that he himself essentially took part in." *Wight,* 219 F.3d at 87. Similarly, the *in pari delicto* doctrine uses agency determinations to determine if a plaintiff should be prohibited from recovering damages due to his equal fault. *LaSala v. Bank of Cyprus Public Co. Ltd.,* 510 F. Supp.2d 246, 278 (S.D.N.Y. 2007).

It is a "fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation." *Wight,* 219 F.3d at 86. This

7

is because of the presumption that agents disclose all information to their principals and so "any

misconduct engaged in by a manager is with—at least—his corporation's tacit consent."

*CBI*, 529 F.3d at 448 (citing *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784 (1985)).

The Complaint clearly alleges that Defendants—in their capacity as TSE's accountants

who prepared tax returns—concealed TSE's federal payroll tax liability by making numerous

false representations, including suspicious journal entries and inaccurate federal and state tax

returns. (*See, e.g.,* Compl. ¶ 95–96.)  Thus, there is little doubt that Defendants acted within the

scope of their employment with TSE.  Unsurprisingly, the Trustee acknowledges the

applicability of the *Wagoner* rule and instead focuses on the two exceptions to this rule that, the

Trustee argues, preclude dismissal of the Complaint.  (Opp'n ¶ 3.)  The Court analyzes each

exception, in turn.

### B.      Non-statutory Insider Exception

The *Wagoner* rule does not protect insiders.  *See In re Optimal U.S. Litigation*, 813 F.

Supp. 2d 383, 400 (S.D.N.Y. 2011) ("[I]n pari delicto 'does not apply to the actions of

fiduciaries who are insiders in the sense that they either are on the board or in management, or in

some other way control the corporation.'").  "The insider exception derives from the notion that

it would be inequitable to allow an insider to rely on [*in pari delicto*] imputation because it

would essentially shield the insider[s] from the consequences of their own handiwork."  *In re*

*PHS Grp. Inc.*, 581 B.R. 16, 30–31 (Bankr. E.D.N.Y. 2018) (internal citations and quotation

marks omitted).  Accordingly, a trustee may assert claims against the debtor's insiders when

there is an alleged injury to the debtor.  *In re PHS Grp. Inc.*, 581 B.R. 16, 30–31 (Bankr.

E.D.N.Y. 2018); *Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 122 (Bankr. S.D.N.Y. 2011).

The Bankruptcy Code defines an "insider" as a "director of the debtor; officer of the debtor; person in control of the debtor; partnership in which the debtor is a general partner, general partner of the debtor; or relative of a general partner, director, officer, or person in control of the debtor."  11 U.S.C. § 101(31)(B).  The "control" element has been applied to "non-statutory insiders."

> When identifying non-statutory insiders, courts look to a list of non-exclusive factors:
>
> (1) the close relationship between the debtor and the third party, *In re 455 CPW Assoc.*, 2000 WL 1230569, at *5 (finding an insider as one who has a sufficiently close relationship to the Debtor that his conduct is subject to closer scrutiny); (2) the degree of the individual's involvement in the debtor's affairs, *In re Borders Grp., Inc.*, 453 B.R. at 469; (3) whether the defendant had opportunities to self-deal, *In re ABC Elec. Serv., Inc.,* 190 B.R. 672; and (4) whether the defendant holds or held a controlling interest in the debtor corporation, *In re Borders*, 453 B.R. at 469.

*In re PHS Grp. Inc.*, 581 B.R. at 33.

The Trustee argues that Defendants' status as non-statutory insiders precludes application of the *Wagoner* rule.  (*Id.* ¶ 3.)  Specifically, the Trustee contends that Defendants were for all practical purposes the chief financial officer, treasurer, and controller of TSE, and thus non-statutory insiders of TSE.  (*Id.* ¶¶ 21–25.)  Irrespective of their title, they enjoyed unfettered control over the maintenance of TSE's books and records, prepared TSE's financial reports, and prepared and filed all of TSE's tax forms.  (*Id.*)

The Trustee further contends that the Defendants acted with autonomy.  TSE had no employees or acting senior management, who assisted, provided or supervised the services rendered by Defendants.  Thus, Defendants allegedly were not third parties conspiring with management—they *were* management.  (*Id.*)

Since the Complaint sufficiently alleges a close relationship between the Debtor and Defendants, the first factor weighs in favor of insider status.  Since at least 1995, Defendants had

9

been providing accounting services to Tri-State Group entities and/or Cassera.  (Compl. ¶ 36.)

After TSE was incorporated and began providing PEO services to CRS in 2011, Defendants

expanded the scope of their work to provide outside accounting services to TSE as well.  (*Id.*)

Mr. Kossoff and Cassera traveled together regularly by private jet from Florida to New York,

where Tri-State and CRS were headquartered.  (Compl. ¶ 40.)  They met frequently concerning

Tri-State and Cassera's businesses, and Defendants advised on all financial matters involving

Tri-State and Cassera's other businesses.  (*Id.*)  Indeed, after TSE's massive unpaid tax liabilities

were discovered, Mr. Kossoff made presentations on behalf of Cassera to CRS's board of

directors, claiming that the unpaid payroll tax liability was a "surprise" and had been

"unknown."  (*Id.*)

The allegations in the Complaint fail to satisfy the second factor—degree of involvement.

The Complaint alleges that Defendants "provided accounting services to TSE, kept its books and

records, prepared TSE financial statements, prepared dozens of TSE tax returns, and had direct

and unfettered input and access to TSE's financial reporting systems."  (Compl. ¶ 5.)  It is

unclear from these allegations whether Defendants' involvement essentially fulfilled the roles

ordinarily carried out by a company's senior internal financial and accounting personnel (since

TSE did not have a CFO or Treasurer), such as making decisions regarding how to account for

the Debtor's business activities, which would arguably trigger the non-statutory insider

exception, or, rather, whether Defendants only acted in the traditional role of outside

accountants.  The Complaint here does *not* allege that Defendants exerted significant influence

over decisions that affected the Debtor's operations.  The distinction between the roles of senior

internal financial and accounting personnel and of outside accountants is important in deciding

whether the Defendants were non-statutory insiders.  The *Wagoner* rule has often been applied to

dismiss claims against a debtor's outside accountants.  For instance, the court in *CBI* stated:

> "[B]reach of contract, negligence, and fraud, when committed by auditors,
> are a single form of wrongdoing under different names," and therefore,
> under the logic of *Wagoner,* a bankruptcy trustee does not have standing to
> bring any claims related to professional malpractice in the context of
> cooperative wrongdoing between the debtor and its auditors. *Cenco Inc. v.
> Seidman & Seidman,* 686 F.2d 449, 453 (7th Cir.1982); *see also Wedtech
> Corp. v. KMG Main Hurdman (In re Wedtech Corp.),* 81 B.R. 240, 241
> (S.D.N.Y.1987) (reaching this conclusion in the context of claims brought
> under New York law).  Thus, in *Hirsch v. Arthur Andersen & Co.,* 72 F.3d
> 1085 (2d Cir.1995), we held that a trustee lacked standing to sue a bankrupt
> corporation's auditors "for professional malpractice on the basis that
> activities undertaken by the[ ] [auditors] to effectuate ... scheme[s aimed at
> defrauding creditors] *also* impacted adversely upon" the corporation, where
> the corporation collaborated with the auditors "in promulgating and
> promoting the ... schemes." *Id.* at 1094 (applying the *Wagoner* rule under
> Connecticut law).

*CBI*, 529 F.3d at 448.

The third and fourth factors—self-dealing and controlling interest—weigh against insider

status.  The Complaint does not plead self-dealing by the Defendants; nor does it plead that

Defendants hold any interest in TSE, let alone a controlling one.

The Trustee correctly states that "[t]he principal consideration in a non-statutory insider

analysis is the degree of control the employee exercises over the debtor."  (Opp'n ¶ 23) (citing *In

re PHS Grp. Inc.*, 581 B.R. 16, 33 (Bankr. E.D.N.Y. 2018).  The Court concludes that the

allegations in the Complaint do not plausibly allege that Defendants exercised the requisite

degree of control over TSE.  First, the Complaint alleges that Cassera, not Defendants, exerted

"total control" over TSE's operations.  (Compl. ¶ 28.)  Additionally, the Complaint portrays

Cassera as the mastermind of the alleged fraud relating to the massive tax liability.  (*Id.* ¶ 34.)

Since Defendants' role as accountant is facilitative in nature, the Court cannot plausibly infer

from the Complaint that Defendants exerted any degree of control in perpetrating the alleged

fraud.

Given that only the first factor favors the Trustee's position, the Court concludes that the

Complaint does not support a plausible inference of the non-statutory insider exception.  During

oral argument, however, the Trustee's counsel argued that there are additional facts that can be

alleged in good faith demonstrating that these Defendants acted effectively as TSE's CFO,

Treasurer or other senior finance and accounting personnel, who made important accounting

decisions that facilitated the massive fraud.  It is clear to the Court that through the extensive

investigation conducted by the Trustee relating to the CRS Debtors since this Complaint was

filed in October 2018, the Trustee may well have developed sufficient facts to satisfy the

requirements for the non-statutory insider exception.  He deserves a chance to do so.

Consequently, dismissal here will be **WITHOUT PREJUDICE** and with leave to amend.

### C.    The Adverse Interest Exception

The adverse interest exception rebuts the usual presumption that the bad acts of managers

acting within the scope of their employment are imputed to the corporation.  *CBI,* 529 F.3d at

448.  The rationale for the exception is that, while an agent is typically presumed to disclose all

relevant facts to his principal, when a manager is defrauding a company, the company cannot be

presumed to have known of the fraud.  *See id.*  "The theory is that where an agent, though

ostensibly acting in the interest of the principal, is really committing a fraud for his own benefit,

he is acting outside the scope of his agency, and it would be most unjust to charge the principal

with knowledge of it."  *Wight,* 219 F.3d at 87.

Adverse interest is a "narrow exception" to the presumption of imputation "where the

corporation is actually the victim of a scheme undertaken by the agent to benefit himself or a

third party personally, which is therefore entirely opposed (i.e., 'adverse') to the corporation's

12

own interests." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 467 (2010). This "adverse interest"

exception applies only where the agent has "*totally abandoned* his principal's interests" and is

"acting *entirely* for his own or another's purposes." *Id.* at 466 (emphasis in original). This

exception is reserved for the "most narrow of exceptions for those cases—outright theft or

looting or embezzlement—where the insider's misconduct benefits only himself or a third

party; *i.e.*, where the fraud is committed *against* a corporation rather than on its behalf." *Id.* at

466–67 (emphasis in original).

The Court concludes that the Complaint not only fails to satisfy the adverse interest

exception, it defeats the exception. "In *Kirschner*, the Court of Appeals determined that simply

keeping a business alive was enough of a benefit to defeat the adverse interest exception." *ICP*

*Strategic Credit Income Fund Ltd. v. DLA Piper L.L.P. (In re ICP Strategic Credit Income Fund*

*Ltd.)*, 568 B.R. 596, 611 (S.D.N.Y. 2017), *aff'd*, 730 Fed. App'x 78 (2d Cir. 2018) (citing

*Kirschner*, 15 N.Y.3d at 468, which held that "[s]o long as the corporate wrongdoer's fraudulent

conduct enables the business to survive [the adverse interest exception] is not met").

Here, the Complaint acknowledges that:

> [a]s a result of Defendants' masking of TSE's tax liabilities and their preparation
> and filing of incorrect tax returns, TSE *was able to continue in business*,
> transferring tens of millions of additional dollars to Tri-State Group entities and
> incurring tens of millions of dollars in additional liabilities that remain unpaid
> today.

(Compl. ¶ 85 (emphasis added).)

TSE "benefited" from Cassera's alleged wrongdoing because Cassera's diversion of

funds that should have been paid to the IRS (and Defendants' alleged concealment of the tax

liabilities) allowed TSE to continue and even expand its business. Furthermore, the Complaint

makes it clear that TSE's continued existence prolonged the existence of the corporate group

which includes the CRS Debtors.  The Court reaches this conclusion by reading together several

allegations in the Complaint.  First, TSE served as the PEO for the CRS Debtors.  (*Id.* ¶ 2.)  As

the PEO, TSE was the employer of record for hundreds of thousands of temporary workers

supplied under the CRS Debtors' contracts with their customers.  (*Id.*)  Second, TSE made

financial accommodations—including the forgiveness or deferral of more than $70 million that

CRS owed TSE under the PEO agreement—so that CRS could pursue dramatic growth by

offering customers competitive pricing and financing options.  (*Id.* ¶ 3.)  Importantly, "TSE

'financed' its accommodations to CRS by failing to pay federal employment taxes for TSE

employees that were supplied to CRS customers. . . ."  (*Id.* ¶ 4.)  Lastly, Defendants' alleged

wrongdoing facilitated these accommodations by masking TSE's tax liabilities.  (*Id.* ¶ 85.)

Viewing these allegations in their entirety, the stringent standards of the adverse interest

exception cannot be satisfied here.

Cassera's wrongdoing (as the alleged mastermind of the scheme) was not solely for his

own personal benefit.  The allegations of the Complaint show that funds collected but diverted

from paying withholding taxes were used in substantial part for funding and expanding the

business.  Defendants' behavior (in allegedly hiding the substantial unpaid taxes) "benefited" not

only TSE itself but also the CRS Debtors in the corporate group.  The Court deems this benefit

sufficient to defeat the adverse interest exception.

Furthermore, there are no allegations that Defendants' conduct amounted to outright

theft, looting, or embezzlement—the kinds of behaviors that would suggest that their actions

benefited only themselves.

The Trustee does not allege that either Cassera or Defendants acted solely for their personal benefit.  Nor did the Trustee allege that the Defendants totally abandoned the interests of TSE.  Therefore, the adverse interest exception fails as a matter of law.

### IV.    CONCLUSION

For the reasons explained above, the Complaint does not satisfy the non-statutory insider exception, and it defeats the adverse interest exception.

Therefore, the Motion is **GRANTED WITHOUT PREJUDICE**, with leave to amend within 21 days from the date of this Order, to allege enough facts to satisfy the non-statutory insider exception but not the adverse interest exception to the *Wagoner* rule.

**IT IS SO ORDERED.**

Dated:        March 7, 2019
              New York, New York

_____*Martin Glenn*_____
         MARTIN GLENN
United States Bankruptcy Judge