## EXHIBIT 1

**Transcript**

# In Re:

*TS EMPLOYMENT, INC.*
*Lead Case No. 15-10243-mg*

_____

*February 11, 2019*

_____

*eScribers, LLC*
*(973) 406-2250*
*operations@escribers.net*
*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*

Min-U-Script® with Word Index

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x

In the Matters of:

TS EMPLOYMENT, INC.,                    Lead Case No.

          Debtor.                       15-10243-mg

- - - - - - - - - - - - - - - - - - - -x

JAMES S. FELTMAN, TRUSTEE,

          Plaintiff,                    Adv. Proc. No.

v.                                      18-01649-mg

KOSSOFF & KOSSOFF LLP, et al.,

          Defendants.

- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                February 11, 2019

                10:18 AM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2 Adversary proceeding: 18-01649-mg James S. Feltman v. Kossoff &

3 Kossoff LLP, et al.

4 Motion to Dismiss Adversary Proceeding (CC: Doc. Nos. 8, 10,

5 12)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20 Transcribed by:  Penina Wolicki

21 eScribers, LLC

22 352 Seventh Avenue, Suite #604

23 New York, NY 10001

24 (973)406-2250

25 operations@escribers.net

1

2  A P P E A R A N C E S:

3  JENNER & BLOCK LLP

4          Attorneys for James Feltman, Trustee

5          919 Third Avenue

6          New York, NY 10022

7

8  BY:   CARL N. WEDOFF, ESQ.

9

10

11  STORCH AMINI PC

12          Attorneys for Defendants

13          140 East 45th Street

14          25th Floor

15          New York, NY 10017

16

17  BY:   JEFFREY CHUBAK, ESQ.

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  All right, in TS Employment, the case is

3    15-10243, it's adversary proceeding 18-01649, Feltman v.

4    Kossoff & Kossoff, LLP.

5          Let me get the appearances, please.

6          MR. CHUBAK:  Good morning, Your Honor.  Jeffrey Chubak

7    from Storch Amini PC, on behalf of the defendants.  With me is

8    Ryan Roberts, a law clerk at my firm, who assisted with the

9    briefing.

10         THE COURT:  Okay.

11         MR. WEDOFF:  Good morning, Your Honor.  Carl Wedoff,

12   Jenner & Block, on behalf of the trustee.

13         THE COURT:  Thank you very much, Mr. Wedoff.

14         All right, this is a motion to dismiss.  Mr. Chubak,

15   you can argue.

16         MR. CHUBAK:  Good morning, Your Honor.  We've asserted

17   in our -- in the motion papers we've stated that the

18   complaint -- the gravamen of the complaint is that the

19   defendants Irwin Kossoff and Kossoff & Kossoff, LLP, which firm

20   that was a different name, helped the principal of TSE and also

21   an affiliate, Tri-State Group Cassera, loot the company for his

22   personal benefit.

23         The trustee, in a different complaint against Robert

24   Cassera, elaborates on how it benefitted him to -- the trustee

25   alleged that the funds were used for Robert Cassera's personal

1 businesses, including restaurant businesses, construction

2 businesses.  But the crux of the complaint is that an outside

3 accountant helped the debtors' sole shareholder and manager

4 loot the company for his personal benefit.  And that's

5 precisely the type of cause of action that the doctrine of in

6 pari delicto and the Wagoner rule was intended to bar.

7          In response, the trustee has stated that the doctrine

8 of in pari delicto doesn't apply, the Wagoner rule doesn't

9 apply, because he was actually a de facto insider,

10 notwithstanding that the complaint doesn't use the term

11 "insider".  And our response to that is simply that he's -- the

12 complaint doesn't allege that he's an insider.  And the

13 specific allegations pointed to in the complaint to support a

14 potential inference that he is an insider don't support such an

15 inference.

16          We've quoted the relevant provisions in paragraph 10

17 of our reply.  It's paragraphs 36 to 39 and 69 and 71 of the

18 complaint.  And those allegations simply state that Mr. Kossoff

19 did exactly what you would expect of an outside accountant who

20 was also his tax accountant -- the debtors' tax accountant.  We

21 state that Mr. Kossoff and his firm managed the debtors' books

22 and records and also handled tax filings on behalf of the

23 debtor.

24          We also noted in paragraph 12 that when similar --

25 when similar argument was made in another action, the district

1  judge said simply, look, this isn't enough to give rise to a

2  plausible inference that the person -- that the accountant was

3  an insider, and dismissed the subject cause of action.

4          The trustee's other argument is that the adverse

5  interest exception applies.  The support -- the argument that

6  we made in our moving papers was that it can't apply because

7  the complaint alleges that the accountant's conduct permitted

8  the debtor to survive longer than it otherwise would have.

9          The Court of Appeals in Kirschner said that that's --

10 the adverse inference exception is inapplicable under those

11 circumstance.

12         The other argument we've made is that it's

13 inapplicable -- that the so-called insider exception to the

14 adverse exception applies, which is to say that the subject's

15 conduct -- let me take a step back.  The adverse exception --

16 the adverse interest exception is inapplicable because the

17 other person for whom the conduct was supposedly benefiting was

18 himself the wrongdoer.

19         THE COURT:  Well, let me ask you a hypothetical, okay?

20 If Kossoff & Kossoff essentially functioned as the in-house

21 accounting department, would that satisfy the nonstatutory

22 insider exception?

23         MR. CHUBAK:  I'm going to ask a question about the

24 question.

25         THE COURT:  Sure.

1      MR. CHUBAK:  Are you asking if he was a controller of

2  TSE?

3      THE COURT:  Well, look, it was -- so normally an

4  outside accountant -- KPMG -- doesn't prepare financial

5  statements, it audits them.  A company's accountants, internal

6  accounting, prepares the books and records, prepares the

7  financial statements.  And the role of an outside accountant is

8  to audit those financial statements.  And in that context,

9  there are plenty of cases that apply the Wagoner rule and

10  dismiss the actions against the accounting firm.

11      And so my question is -- I'm asking hypothetically, if

12  an accounting firm -- slot KPMG -- we're talking about smaller

13  accounting firm, Kossoff & Kossoff -- if it essentially is the

14  in-house accounting department, if it is doing all of the

15  entries into the books and records and it's preparing the

16  financial statements which it audits, would that hypothetical

17  satisfy the nonstatutory insider exception to the Wagoner rule?

18      MR. CHUBAK:  I'm not sure it would, Your Honor.  And

19  the reason why I'm stating as much is because the complaint

20  alleges that there was just one shareholder of this -- of the

21  debtor and there was just one officer of the debtor.  And under

22  those set of circumstances, even if Mr. Kossoff were

23  functioning as an in-house accountant, he still wouldn't

24  qualify as an insider.  He still doesn't have the requisite

25  management and control.  He's not --

1          THE COURT:  He doesn't have to make the books -- the

2    entries into the company's books and records.  I mean, if --

3    probably not Mr. Kassoff himself -- but if he's supplying the

4    internal accounting department and they're willy-nilly making

5    the entries in the internal books and records, preparing the

6    financial statements which Kossoff & Kossoff is going to

7    audit -- let me ask, are there are -- I'm not familiar with it.

8    Are there cases that address the nonstatutory insider exception

9    where the professionals, whether it be accountants or lawyers,

10   essentially are functioning completely as an in-house -- an

11   internal accounting department or internal law department would

12   function?

13          MR. CHUBAK:  Well, that was the allegation made in --

14   that was the position taken in the Total Wealth Management

15   decision that we cited in paragraph 12 of our reply.  And the

16   district judge dismissed the complaint on the grounds that

17   control over TWM -- over the company's financial books and

18   records and management of the financial records doesn't

19   plausibly allege that the accountant is an insider.

20          THE COURT:  Okay.  Any other cases besides Total

21   Wealth Management?

22          MR. CHUBAK:  None cited in the briefing.

23          THE COURT:  Or that you're aware of?

24          MR. CHUBAK:  Or that I'm aware of.

25          THE COURT:  Okay.  All right.

1          MR. CHUBAK:  Thank you, Your Honor.

2          THE COURT:  Let me -- I do have a question --

3          MR. CHUBAK:  Sure.

4          THE COURT:  -- about the adverse inference exception.

5     And I'm going to ask it as a hypothetical question, because

6     this complaint may not satisfy the requirements or not.  Okay?

7     From other CRS/TSE cases before me, I recently tried a case --

8     Jenner & Block was the trustee's counsel in the case -- against

9     Wells Fargo.  And it dealt with the -- I haven't ruled yet --

10    the line of credit that Wells provided.

11          And the evidence during the trial showed that Wells

12    basically wanted to dump all of these entities as a customer;

13    and one of the main reasons was they were on this broad

14    expansion effort acquiring numerous firms.  Wells was concerned

15    they were using the funds from the line of credit to do that,

16    rather than arguably the purpose for which the line was

17    intended.

18          So if -- I've never gotten a report that has shown

19    where the 110 million in unpaid taxes -- where the money went.

20    Did it go into Cassera's pocket, did it -- or was it used for

21    the acquisitions of numerous other entities.  And did Tri-

22    State's business or TSE's business benefit from the

23    acquisitions?  Why?  Because it provided more temporary

24    employees.  They -- et cetera.

25          One of the allegations in this complaint about did the

1    funds go to benefit Cassera individually or did it benefit the

2    company directly or indirectly?

3              MR. CHUBAK:  The complaint alleges that the missing

4    funds -- and I don't believe the complaint says all of the

5    missing funds, but just referring to the missing funds

6    generally -- were used for the benefit of Tri-State or Cassera

7    individually.  And in the --

8              THE COURT:  Tri-State individually, is -- Cassera

9    individual is a different story, right?

10             MR. CHUBAK:  For the benefit of Tri-State Group or

11   Cassera, Tri-State Group being owned by Cassera, according to

12   the complaint.

13             THE COURT:  TSE is part of that, though, right?  TS

14   Employment is part of that group.

15             MR. CHUBAK:  The complaint also alleges that TSE is

16   owned by Cassera.  That's correct.

17             THE COURT:  So if the funds were used, rather than

18   just to go into Cassera's pocket, but to help fund the

19   business, that would also defeat the adverse interest

20   exception, wouldn't it?

21             MR. CHUBAK:  If the funds were used --

22             THE COURT:  In other words, to establish the adverse

23   interest exception, you argue the complaint alleges the money

24   went to benefit Cassera, his lifestyle or other unrelated

25   businesses or what have you.  If the funds had been used as

1    part of the business, what effect would that have on the

2    adverse inference exception -- interest exception?

3          MR. CHUBAK:  For the adverse interest exception to

4    apply, the entirety of the funds need to be used for the

5    purpose of -- for the benefit of the agent or Cassera --

6          THE COURT:  For Cassera individually, and not for the

7    benefit of the business.

8          MR. CHUBAK:  But the Court of Appeals stated in

9    Kirschner that if the debtor, TSE, were permitted to survive a

10   day longer than it otherwise would have as a result of the

11   subject conduct, the adverse interest exception is

12   inapplicable.

13         THE COURT:  Okay.

14         MR. CHUBAK:  The Court of Appeals said the interest --

15   the exception is supposed to be interpreted very narrowly.  I

16   know you've written -- Your Honor has written extensively about

17   in pari delicto and the Wagoner rule.

18         THE COURT:  Those were some -- I think they were all

19   before Kirschner.

20         MR. CHUBAK:  That's -- yes, I believe that's correct

21   as well.  But Kirschner made it clear that the adverse interest

22   exception is limited in scope, and under the -- under the

23   circumstances --

24         THE COURT:  Of course, in the Second Circuit we have

25   this crazy hybrid, because we have the Wagoner rule with --

 1    that's a standing rule, separate and apart from what the

 2    affirmative defense -- so even if the trustee would survive a

 3    motion to dismiss, you'd have the burden of establishing that

 4    in pari delicto doesn't apply.  But it's one of these -- it

 5    is --

 6              MR. CHUBAK:  Yes.

 7              THE COURT:  -- and not all --

 8              MR. CHUBAK:  They're both --

 9              THE COURT:  -- circuits apply the Wagoner rule.

10              MR. CHUBAK:  They're both imputation doctrines that --

11              THE COURT:  Yeah.

12              MR. CHUBAK:  -- function in a similar manner.  And if

13    anything, the in pari delicto doctrine, as applied in New York

14    has been interpreted very broadly.  Post-Kirschner, I believe

15    it was Judge Gregory Woods in the District Court Lehr decision

16    said there isn't even an insider exception.

17              THE COURT:  Okay.  All right.  Thank you.

18              MR. CHUBAK:  Thank you.

19              THE COURT:  Mr. Wedoff?

20              MR. WEDOFF:  Good morning, Your Honor.  We think the

21    insider -- the nonstatutory insider point is the easier point

22    for the Court to address and we think that defeats the motion

23    to dismiss.

24              The defendants make a great deal about what we allege

25    or do not allege in the complaint.  But I think what's -- I

1   think where the Court should look to establish or at least find

2   a plausible ground to find that the defendants were acting as

3   insiders, if not in the statutory term, but in reality, and in

4   a de facto sense, look at Mr. Kossoff's declaration filed in

5   the TSE case.  He talks about why --

6           THE COURT:  Do you have the ECF --

7           MR. WEDOFF:  Yes.

8           THE COURT:  -- document?

9           MR. WEDOFF:  It's docket 99 in the TSE main case,

10   which is 15-01243.  It was filed April 22, 2015.

11          THE COURT:  Okay.  And what does it say?

12          MR. WEDOFF:  Well, what we says is -- well, first of

13   all, he says that there was no fraud and there was no

14   wrongdoing and no misconduct.  But then he goes on to say why

15   these funds were moved the way they were.  He talks about the

16   business stresses that TSE was facing.  He talks about meeting

17   with the IRS along with TSE's counsel to explain how they're

18   going to pay this back and how they're going to fix everything.

19   And if it wasn't for big bad Wells Fargo pulling the plug, this

20   would have all gone away and there'd be no problem.

21         We don't think that's right, obviously.  And I think

22   the -- we don't think the defendants really seriously contest

23   that we've sufficiently alleged the elements of fraud and the

24   elements of accounting malpractice.  So really this comes down

25   to exceptions to the Wagoner's rule.

1            THE COURT:  Okay.  So did TS Employment have an

2     internal accounting department?

3            MR. WEDOFF:  No, TS Employment -- there was a void

4     there.  Certainly we assert -- I think they're right, if we

5     were -- if this was limited to is there a named officer at

6     TSE -- and it's not really clear how that was structured --

7     maybe it was just Cassera.  But there was no CFO, there was no

8     controller, there was no treasurer.  And Kossoff's own

9     testimony shows that he was taking this role.  And if there's

10    ambiguity there, there's certainly --

11           THE COURT:  What did Kossoff say that he was taking

12    that role --

13           MR. WEDOFF:  Well, he talked about -- I can give you

14    paragraph cites -- but he talks about --

15           THE COURT:  Tell me --

16           MR. WEDOFF:  -- his extensive knowledge of the books

17    and records of the debtor.

18           THE COURT:  Tell me the paragraph cite.

19           MR. WEDOFF:  I think the -- maybe the simplest place

20    to point is paragraph 16.  It's on page 9 of his declaration.

21    And he talks about moving --

22           THE COURT:  Do you have quote --

23           MR. WEDOFF:  -- this money --

24           THE COURT:  -- you have it there?  Can you tell me

25    exactly what it says?

1          MR. WEDOFF:  Yeah, it --

2          THE COURT:  I don't have it in front of me.

3          MR. WEDOFF:  Yeah, it's:  "The payroll tax liabilities

4    of the debtor, which were sixty-seven million dollars for the

5    year-end 2013, had been transferred to the books of TSES," and

6    that's Tri-State, "reported on Tri-State's 2013 tax returns,

7    and then in late 2014, those 2013 tax liabilities were

8    transferred back to the debtor."

9          But the lead-up to that quote is why this happened.

10   And he talks about Tri-State having CRS stock, and they were

11   going to use that stock to pay back these liabilities, and then

12   the stock went down in value.

13         These are not the kind of comments that a third-party

14   strip-mall accountant makes.  The point is, that he --

15         THE COURT:  I don't know whether it is or not.  I

16   mean, if -- by the time he's doing that, things have hit the

17   fan, I mean, and so the question is trying to sort it out,

18   trying to hold off the regulators, hold off the IRS, hold off

19   the U.S. Attorney.  And I mean, oftentimes you do get outside

20   professionals who come in to take on that role rather than the

21   insider.

22         What is it, in your view -- what are the allegations

23   in the complaint or in any of the other evidence that you

24   believe you can point to that demonstrates that Kossoff

25   essentially was -- had control over the books and records, the

1    internal books and records, of these entities?

2          MR. WEDOFF:  Well, I think it's the vacuum.  It's the

3    lack of a back office, right, and the fact that the individual

4    who files this declaration explaining why these decisions were

5    made was Irwin Kossoff.

6          The defendants make a great deal of the fact that he's

7    eighty-something years old and retired in Florida and he worked

8    on an hourly basis.  But that doesn't detract from the fact

9    that this was the guy.  He had been working for Cassera since

10   1995.  He had had -- as far as we know -- complete control of

11   the books and records from the time Tri-State was formed.

12         As far as we -- the only other person --

13         THE COURT:  What is it -- where is that -- is that in

14   the complaint?

15         MR. WEDOFF:  Yeah, it's in his declaration.  It's

16   also --

17         THE COURT:  No, but tell me -- I want to know if it's

18   in the complaint.

19         MR. WEDOFF:  Okay, we'll go to the complaint.

20         THE COURT:  Look, I have a couple -- stop a second,

21   Mr. Wedoff.

22         There are a couple things I have to decide.  First and

23   primarily is whether the amended complaint states a cause of

24   action.  Okay?  And obviously the Wagoner rule and in pari

25   delicto is front and center of the defense that's being

1    asserted, and it's a very strong doctrine in this circuit -- in

2    this state, and the Wagoner rule in this circuit.

3          And if I conclude that the complaint does not

4    sufficiently state a claim because it does not plead a basis to

5    except these claims from the Wagoner rule, then the issue is do

6    I dismiss with leave to amend or not.

7          So when you point to something outside of the

8    pleading, I'll look at it to see whether if that were in the

9    pleading itself would that be sufficient.

10          So you filed the amended complaint in October 2018 --

11   not that long ago.  The trustee and his professionals, lawyers,

12   forensic accountants, others, have done very extensive

13   investigation of these debtors and their affiliates.  And if I

14   were to conclude that this amended complaint -- the allegations

15   in the amended complaint do not sufficiently rebut the in pari

16   delicto state law defense or the Wagoner rule standing defense,

17   what good-faith allegations not included in this complaint do

18   you believe the trustee could assert in a second amended

19   complaint to try and show -- in other words, the defendants'

20   counsel -- and I have to go back and reread it, points to Total

21   Wealth Management as a decision closely on point.

22          And I'll go back and look at it.  Let me ask you the

23   same question I asked him.  Are there cases involving

24   nonstatutory insiders that you believe would support the

25   conclusion that you've adequately pleaded that Kossoff &

1    Kossoff and Irwin Kossoff are nonstatutory insiders?  Are there

2    case -- I asked this question before.  Are there cases where

3    the outside accountant or the outside lawyer essentially has

4    functioned at the in-house department with control over the

5    entries in the books and records?  Are there -- do you have

6    any -- what cases would you point to?

7         MR. WEDOFF:  We don't have a case with that particular

8    allegation.  We've looked.

9         I will say that Calderone is not on point.  Calderone

10   is a California state law case.  And under the state statute

11   you need to have control over the corporation.  And the way I

12   read that statute and the way I read the case is that this was

13   the singular control that PHS and the in pari delicto doctrine

14   and the Wagoner rule do not require to establish a nonstatutory

15   insider.

16        We do not allege that Kossoff had singular control

17   over TSE.

18        THE COURT:  And you don't think you have to allege

19   that.

20        MR. WEDOFF:  We don't think we have to allege that.

21   It's a -- we have to show that he's an insider.  And that's

22   something different than singular control.  In fact, the

23   Calderone court even says they alleged in the complaint that

24   he's an insider.  But they don't show that he's a director or

25   an officer or had control over the entity.

1      We think that's right.  But we also think that -- so
2  to answer your question, we didn't find a case where they said
3  okay, you were an outside accountant but you were acting as
4  CFO.  But he wasn't acting as an accountant.  And we think
5  the -- so to answer your first questions, where are the
6  allegations, paragraphs 36 to 40 --
7          THE COURT:  Let me read them over.
8          MR. WEDOFF:  -- of the complaint.
9          THE COURT:  I've got the complaint.  Hang on.
10          MR. WEDOFF:  And --
11          THE COURT:  Give me a second, Mr. --
12          MR. WEDOFF:  -- the --
13          THE COURT:  Mr. Wedoff, stop.
14      (Pause)
15          THE COURT:  You start paragraph 36 by saying, "Since
16  at least 1995, defendants have been providing outside
17  accounting services to Tri-State Group entities and/or
18  Cassera."
19          And so when I read the paragraphs that follow:  37,
20  38, 39, 40, don't I read 37 through 40 having in mind 36 --
21  paragraph 36, it was outside accounting services?  It was
22  not -- they were not -- some small businesses hire one
23  accounting firm to do their internal accounting and then maybe
24  if they have to have audited financials, another firm does the
25  audit, because there'd be a real question about independence

1  whether an auditor could actually do certified financial

2  statements if they had done -- made all the entries in the

3  books and records in the first instance.

4          What is it your view that Kossoff was doing?  Were

5  they actually making the entries into the company's internal

6  books and records?

7          MR. WEDOFF:  That's our understanding.  And it's not a

8  matter of -- I guess the example, okay, you have control over

9  books and records, it's not a matter of where there's some CFO

10 saying you have a login to our system, you can move some money

11 around.  And we do cite to this declaration in our complaint,

12 so it's not like we're just pulling this out of thin air -- but

13 this is based largely on his declaration.

14         THE COURT:  See, because you say that --

15         MR. WEDOFF:  In the --

16         THE COURT:  -- in 38 --

17         MR. WEDOFF:  Sorry.

18         THE COURT:  -- you say "defendants had direct and

19 unfettered access to Tri-State's and TSE's financial reporting

20 system and directly made adjustments, ledger entries, and

21 journal entries."  You seem to incorporate two separate

22 theories into that paragraph:  1) they had access to it.  But

23 that doesn't tell me, were they making all the entries into the

24 books and records.

25         Are you able to allege in good faith that Kossoff, the

1    accounting firm, was supplying the people to actually make the

2    entries into the books and records?

3              MR. WEDOFF:  Yes, I think we can allege that in good

4    faith, Your Honor.

5              And to answer your question about outside accounting,

6    I think our point is --

7              THE COURT:  Because there are no -- there weren't

8    audited -- were there audited financial?

9              MR. WEDOFF:  No, there were.

10             THE COURT:  Okay.

11             MR. WEDOFF:  I believe that was Lilling & Company who

12   did the audit.

13             THE COURT:  Okay.

14             MR. WEDOFF:  But they were -- in a titular sense, they

15   were outside accountants.  We don't challenge that.  They were

16   not hired -- they were not TS --

17             THE COURT:  They weren't staffing the internal

18   department.

19             MR. WEDOFF:  Correct.  And that's an important point,

20   I think, we have to make.  And to the extent we amended this,

21   would we clean up that language or explain our allegations more

22   clearly, perhaps.  But we think the -- to the extent the

23   allegations need to be fleshed out, I think it would just be a

24   matter of incorporating more of the declaration we just

25   cited --

1          THE COURT:  Let me ask, did they employ -- did they

2   employ people -- was there an internal accounting department,

3   and did it have employees?

4          MR. WEDOFF:  Not as far as we know.  I don't believe

5   there was.  I believe Tri-State performed some of these

6   functions.  And again, they did not draw a clear distinction

7   between Tri-State and TSE.

8          But there was not -- there was not a CFO.  There was

9   not a controller.  There was not a treasurer.  And we think

10  it's certainly plausible, but I think it goes beyond plausible,

11  and I think Kossoff's own testimony strongly suggests that he

12  had these roles.  So I think dismissal --

13         THE COURT:  Has he been deposed?

14         MR. WEDOFF:  I don't believe so.  He has been

15  interviewed, but I don't believe he's been deposed.

16         THE COURT:  Interviewed by --

17         MR. WEDOFF:  By the trustee.

18         THE COURT:  -- the trustee's professionals?

19         MR. WEDOFF:  This was before my time.  But it's

20  referenced in his declaration.  That's my only knowledge of it.

21         THE COURT:  Anything else you want to add?  Well,

22  address the adverse inference.

23         MR. WEDOFF:  Okay.  Adverse interest, I think, is a

24  closer question, because it is very narrow.  But we do think at

25  this stage, before discovery, before facts have come in, we

1    think there is a reasonable inference to be drawn that TSE
2    existed only to move money that should be going to the taxing
3    authorities to TSE.

4          THE COURT:  Was the money used to fund acquisitions?

5          MR. WEDOFF:  Well, we don't have a record, Your Honor,
6    but we think it's -- we think it's --

7          THE COURT:  Well, when you say you don't have a
8    record, the trustee has been diligently investigating and doing
9    everything possible to figure out what happened -- follow the
10   money.  And in the Wells trial your colleague Mr. Lazar tried
11   you were here.  One of Wells' allegations is the point I made
12   before, is why did they want to exit the relationship, because
13   they felt that a lot of the money was going to fund
14   acquisitions.

15         And I'm not sure you could maintain -- so was the
16   business -- it may be the acquisitions weren't by these
17   specific entities -- but was their business benefited by the
18   acquisitions they did, because it meant more business, it meant
19   more -- it meant more reimbursements of payroll and taxes that
20   didn't get paid?

21         MR. WEDOFF:  I don't know that TSE benefited.  The
22   facts may show that.  But I think at this point, I think you
23   could make the reasonable argument that these actions only
24   serve to benefit the Tri-State Group, and they did not benefit
25   TSE.

1          Judge Stong's decision in Allou Distributors says,

2     where a corporation's assets were dissipated, diverted, or

3     depleted without a corresponding benefit, that's sufficient to

4     allege damages.  So --

5          THE COURT:  Was that a case that involved a group of

6     defendants?  I mean, here there's a group.  Cassera owns them

7     all.  And one of them collects the money, and it gets used as

8     part of the group to keep funding the group to keep it alive to

9     fund acquisitions, for whatever purpose.  How can you -- can

10    you really -- did Judge Stong's decision -- my recollection,

11    and I haven't gone back to read it recently, but it did not

12    involve a group of companies, one of them money's coming in,

13    it's being used to support the operations of the group as a

14    whole rather than the one that collected the money.

15         MR. WEDOFF:  No.  And I think what Your Honor would

16    have to find -- but I think it's a plausible conclusion to draw

17    from our allegations -- is that TSE doesn't benefit by Tri-

18    State's acquisitions.

19         THE COURT:  Why not?

20         MR. WEDOFF:  TSE -- because it's a separate PEO.  It's

21    providing PEO services to CRS.  And we've gone on -- it's an

22    issue in the Wells Fargo trial as to the separateness of -- a

23    very important issue -- the separateness of Tri-State and TSE.

24         If Tri-State's acquisitions benefited TSE, if there's

25    no way around that, I think we'd have a hard time establishing

1   adverse interest.  But we don't think that's -- we don't think

2   that's our allegations; we don't think that's the complaint; we

3   don't think that's the only plausible conclusion you can draw.

4          But again, I think it's a --

5          THE COURT:  Let me ask you this.

6          MR. WEDOFF:  -- it's a tougher question --

7          THE COURT:  If I were to grant the motion to dismiss

8   with leave to amend, what additional allegations -- what

9   additional good-faith allegations do you believe the trustee

10  would be able to assert to establish that Kossoff & Kossoff

11  were nonstatutory insiders?

12         MR. WEDOFF:  Well, again, I don't think -- I don't

13  think we're missing anything.  If anything --

14         THE COURT:  I'm just -- I'm asking a hypothetical

15  question.

16         MR. WEDOFF:  I understand.

17         THE COURT:  Do you believe that there are additional

18  allegations that the trustee could assert to establish that

19  Kossoff & Kossoff was a nonstatutory insider?  Your complaint

20  says what it says.  If I were to conclude that that's not

21  enough, are there additional allegations that you believe the

22  trustee, in good faith, could assert, to bolster its argument

23  that Kossoff & Kossoff and Irwin Kossoff were nonstatutory

24  insiders?

25         MR. WEDOFF:  I believe there is based on the fact that

1    Kossoff has been interviewed, based on reading -- rereading his

2    declaration.  There's this interview with the IRS where it

3    appeared that he was the point person.  That's not really

4    detailed in our complaint, but we do cite to his declaration in

5    our complaint.

6         THE COURT:  I'm going to go back and read the

7    declaration.

8         MR. WEDOFF:  You could take judicial notice of the

9    declaration, even if it's -- but I think they would be along

10   the same lines.  I don't think we're going to come up with some

11   new theory.  There isn't some missing fact.  I think it's going

12   to be along the same lines that he was the one -- he as the one

13   there in the vacuum in the financial back office.

14        THE COURT:  Well, it's one thing to say that when

15   things fell apart, he was the point person in dealing with the

16   IRS.  You know there's -- but that's not what important here,

17   in my view.  What's important here is what was his and his

18   firm's role before things fell apart?

19        MR. WEDOFF:  Well, I think that's detailed in the

20   complaint.  It talks about the nonpayment of taxes going back

21   to 2012/2013, 2013/2014.  He was there throughout.

22        Now, the eve of bankruptcy journal entries, I don't

23   think -- I think that's more indicative of the fact that

24   something was wrong.  I think he was aware, that there was

25   intent.  But the hiding of the liabilities went back for years.

1          I think it's laid out in the complaint.

2          THE COURT:  Okay.

3          MR. WEDOFF:  Maybe it's --

4          THE COURT:  All right.

5          MR. WEDOFF:  -- maybe it's not clear.  But we think

6    it's there.  So I don't think there would be new theories.  I

7    do think we could tighten some things up, perhaps, with an

8    amended complaint.

9          THE COURT:  I haven't decided --

10          MR. WEDOFF:  I understand.

11          THE COURT:  -- if this is deficient.  I'm just asking

12    questions that if I were to dismiss with leave to amend, what,

13    if anything, additional do you believe the trustee would be

14    able to allege.

15          Okay, that's fine.

16          MR. WEDOFF:  Thank you.

17          THE COURT:  Okay, thanks.

18          Rebuttal?

19          MR. CHUBAK:  Thank you, Your Honor.  Really this is

20    about whether the trustee has adequately alleged control -- the

21    requisite level of control in the complaint.

22          If Kossoff had achieved -- if Kossoff had a certain

23    level of control then he would be an insider --

24          THE COURT:  Well, let me ask you this.  If an

25    accountant is the one who is making the journal entries, false

1    journal entries, to hide unpaid tax liability, what is required
2    to establish control?  If the accountant knows -- if the person
3    making the entries, or Kossoff who's overseeing this own people
4    in doing it, knows that taxes haven't been paid and we've hid
5    this fact, you're saying that -- what difference would it make
6    whether -- wouldn't there be -- if Kossoff had been -- if he
7    was an employee of Tri-State and had made false entries or
8    steps to hide the truth, would you agree that he would be
9    subject to liability in tort for doing so?

10            I mean, employees don't get to argue the in pari
11   delicto defense.  The cases, I think, are quite clear about
12   that.  If they are insiders, they don't get to argue in pari
13   delicto.  And the question here -- and an employee doesn't get
14   a free pass because they just happen to be an employee and
15   somebody, in theory, supervises them, and they knew, but the
16   employee went ahead and made the false entries.  That wouldn't
17   insulate the employee from liability.  Do you agree with that?

18            MR. CHUBAK:  Generally the doctrine arises in the
19   context of lawsuits against directors and officers.  And
20   officer is an employee of sorts.  And I agree, they wouldn't be
21   insulated from liability.

22            THE COURT:  And so the question here is, in part,
23   while Kossoff is not a direct employee, was he and his firm
24   essentially carrying out the functions of what employees would
25   ordinarily do?

1      MR. CHUBAK:  I think he -- that Kossoff is --

2      THE COURT:  Would you agree that that's what they were

3  doing?  I understand you argue that that wouldn't be enough to

4  avoid application of in pari delicto.  But do you agree that

5  that's essentially what the trustee alleges that Kossoff &

6  Kossoff was doing?

7      MR. CHUBAK:  Yes.  But one of the issues is that --

8      THE COURT:  So the yes, is you --

9      MR. CHUBAK:  No, well, he --

10      THE COURT:  Yes?

11      MR. CHUBAK:  His function was -- overlapped

12  substantially.  An outside accountant would do many of the same

13  functions, including handling tax -- report -- handling tax

14  filings and managing financial records.

15      THE COURT:  You make the tax filings based on what the

16  books -- the entries you've made into the books and records,

17  right?

18      MR. CHUBAK:  Sure.

19      THE COURT:  So if you make the entries into the books

20  and records knowing that they're false, you don't absolve

21  yourself from liability preparing the tax returns because, oh,

22  that's tax returns.  I was the outside accountant for that.

23  But yes, I was the inside accountant for purposes of making

24  false entries into the books and records.  Do you agree?

25      MR. CHUBAK:  An outside accountant will often manage a

1  company's books and records.  I think --

2           THE COURT:  Not true.  Not true.  Do you have

3  something to show that or support that?

4           I used to do accounting when I was in practice.  I

5  mean, one of the things I did was accounting liability cases.

6  Auditors -- in every one of those cases -- and I used to defend

7  auditors.  It's the company's books and records, not -- that's

8  their responsibility.  The accountant's role is to audit them.

9           MR. CHUBAK:  I mean --

10           THE COURT:  We don't prepare the books and records.

11  Do you do accountant liability cases?

12           MR. CHUBAK:  The --

13           THE COURT:  Do you?  That was a yes or a no.

14           MR. CHUBAK:  No.

15           THE COURT:  Okay.  Do you have expertise in knowing

16  what the role of the outside accountants is?

17           MR. CHUBAK:  Well, the subject --

18           THE COURT:  Every one of the cases I'm familiar with,

19  when I was either representing the accountants or representing

20  other defendants in the litigations, the accountant's defense

21  is:  not our books and records.  It's the company's books and

22  records.  Our role is to audit them.

23           MR. CHUBAK:  The subject accountant in Total Wealth

24  Management was alleged to have total control over the company's

25  books and records and managed the financial records.  And that

1  wasn't considered sufficient to give rise to a level of control
2  needed to qualify for insider status.

3          THE COURT:  Okay.  Anything else you want to add?

4          MR. CHUBAK:  The trustee's response is, in substance,
5  they have enough based on the declaration to have -- to put in
6  an amended complaint that would survive in pari delicto and
7  Wagoner rule.  The subject declaration was on file long before
8  the complaint was submitted.

9          THE COURT:  I understand.  But it's not in the
10 complaint.  Okay?  And the question is if the complaint were --
11 well, let me ask you this.  Are you agreeing that even though
12 it's not incorporated in the complaint, the Court, in deciding
13 on this motion to dismiss, should treat it as if it were -- if
14 the allegation -- if all of the statements in the declaration
15 were included in the complaint, you still don't believe that it
16 satisfies?

17         MR. CHUBAK:  That's correct.  I mean, the Court could
18 certainly take judicial notice of the -- of what's in the
19 declaration.  We don't think that anything in his declaration
20 includes anything that would give rise to a plausible --

21         THE COURT:  So if I concluded that the facts in the
22 declaration are sufficient, you're not standing here to tell me
23 that you insist that the trustee amend the complaint -- further
24 amend the complaint to include those allegations?

25         I'm ruling on a motion to dismiss.  I'm dealing with

1   an amended complaint.  And Mr. Wedoff has pointed to the

2   declaration.  He thinks it's sufficient.  I'm not saying

3   whether it is or it isn't.  But I'm just -- as a -- if I

4   conclude that if the allegations in the declaration were

5   included in an amended complaint, that would be sufficient,

6   you're not saying that the trustee has to go ahead and amend

7   the complaint?  Or are you?

8           I'm not telling you -- I'm not trying to force you

9   into -- I just want to know what your position is, okay?

10          MR. CHUBAK:  As the complaint stands, I think -- I

11  think it would be appropriate to amend the complaint.

12          THE COURT:  Okay.  All right.  I'm not pressing you

13  further.  I'm really just trying to understand procedurally

14  where we stand.

15          It's not in the amended complaint.  I haven't made a

16  decision whether it would be sufficient if it were in the

17  amended complaint.  You would be perfectly within your rights

18  to say they would need to include the allegations, and you'd

19  have to grant leave, Judge, and we would oppose it, or

20  whatever.  But that would have to be in an amended complaint.

21          MR. CHUBAK:  Yes.  I think that's --

22          THE COURT:  All right.  That's fair.

23          Anything else you want to add?

24          MR. CHUBAK:  With respect to the adverse interest

25  exception --

1          THE COURT:  Yes, go ahead.

2          MR. CHUBAK:  -- the relevant inquiry is -- the key

3    inquiry in dealing with the exception is whether the trustee

4    has pled the existence of an innocent officer or shareholder.

5    And it's just not even possible here.  The trustee's pled that

6    the only officer was Cassera and the only shareholder was

7    Cassera.

8          Given the inability to plead the adverse interest

9    exception, I think the sole inquiry before the Court is whether

10   the trustee has adequately pled that Kossoff and Kossoff &

11   Kossoff LLP were -- had the requisite level of control to give

12   rise to insider status.  And we don't think that's the case.

13         THE COURT:  Okay, all right.  Thank you very much.

14         MR. CHUBAK:  Thank you.

15         THE COURT:  I'm taking it under submission.

16         MR. WEDOFF:  Your Honor, if I can --

17         THE COURT:  You're not arguing further, Mr. Wedoff.

18         MR. WEDOFF:  I'm not arguing further.

19         THE COURT:  Okay.

20         MR. WEDOFF:  This is not this adversary proceeding.

21         THE COURT:  Could you go up to the microphone?

22         MR. WEDOFF:  Your Honor, we submitted a revised

23   declaration for the trustee in the adversary proceeding versus

24   the insiders, 17-1013, 17-1014, November 29th.  We just wanted

25   to make sure that the Court had received it.

 1          THE COURT:  I don't review the docket on a regular
 2  basis, Mr. Wedoff.  And your -- why are you raising that now?
 3          MR. WEDOFF:  The reason I'm bringing it up, Your
 4  Honor, we moved for default.  And if you recall, we --
 5          THE COURT:  I don't recall.
 6          MR. WEDOFF:  Okay, so we moved for default, we
 7  attached a declaration explaining the damages.  The Court found
 8  it lacking.  So we submitted a revised declaration.
 9          THE COURT:  Talk to my law clerks when we've finished
10  this.  You're not raising it in relation to --
11          MR. WEDOFF:  Oh, no, we're not raising it.  We're not
12  arguing it.  I just wanted to make sure it had been received
13  and --
14          THE COURT:  Just talk to my law clerk.
15          MR. WEDOFF:  Thank you, Your Honor.
16          THE COURT:  Thank you very much.  I'm taking it under
17  submission.  Okay.  We are in recess till 2 o'clock.
18      (Whereupon these proceedings were concluded at 11:03 AM)
19
20
21
22
23
24
25

1

2               C E R T I F I C A T I O N

3

4   I, Penina Wolicki, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7   *Penina Wolicki*

8

9   _____

10  Penina Wolicki (CET-569)

11  AAERT Certified Electronic Transcriber

12

13  eScribers

14  352 Seventh Ave., Suite #604

15  New York, NY 10001

16

17  Date:  March 12, 2019

18

19

20

21

22

23

24

25