**Hearing Date and Time:** Tuesday, June 25, 2019 at 10:00 a.m. EDT

JENNER & BLOCK LLP
Vincent E. Lazar
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

Richard Levin
Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600

*Attorneys for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>TS EMPLOYMENT, INC.,<br><br>　　　　Debtor. | Case No. 15-10243 (MG)<br><br>Chapter 11 |
| JAMES S. FELTMAN, not individually but solely as chapter 11 trustee for TS Employment, Inc.,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>KOSSOFF & KOSSOFF LLP and IRWIN KOSSOFF,<br><br>　　　　Defendants. | Adv. Proc. No. 18-1649 (MG) |

**CHAPTER 11 TRUSTEE'S RESPONSE
TO DEFENDANTS' MOTION TO DISMISS**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND .............................................................................................................................. 2

    A.    Procedural History. ................................................................................................. 2

    B.    Defendants Controlled TSE's Financial Reporting and Accounting
         Functions. ................................................................................................................ 3

DISCUSSION ................................................................................................................................... 4

I.    Legal Standard ......................................................................................................................4

II.    The Imputation Doctrines Are Inapplicable Because Defendants Were TSE
      Insiders. ..................................................................................................................................5

    A.    The Complaint Plausibly Alleges the Defendants' Insider Status. ........................ 7

    B.    Cassera's Control Over TSE Does Not Impact the Insider Analysis................... 10

    C.    The Second *PHS* Factor Supports an Insider Finding. ......................................... 11

    D.    Defendants' Ostensible Position as Outside Accountants Is Irrelevant................ 12

CONCLUSION............................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................5, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................4, 5

*Bernard L. Madoff Inv. Sec. LLC*,
   458 B.R. 87, 122 (Bankr. S.D.N.Y. 2011).........................................................................5, 10

*Bosiger v. U.S. Airways*,
   510 F.3d 442 (4th Cir. 2007) ..................................................................................................5

*Edwards v. Fed. Nat'l Mortg. Ass'n*,
   545 S.W.3d 169 (Tex. App. 2017)..........................................................................................7

*Feltman v. Kossoff & Kossoff LLP (In re TS Employment, Inc.)*,
   597 B.R. 543 (Bankr. S.D.N.Y. 2019)................................................................................2, 7

*In re 7th St. & Beardsley P'ship*,
   181 B.R. 426 (Bankr. D. Ariz. 1994).....................................................................................12

*In re Chari*,
   276 B.R. 206 (Bankr. S.D. Ohio 2002)..............................................................................6, 12

*In re Cont'l Capital Inv. Servs., Inc.*,
   No. 03-3370, 2006 WL 6179374 (Bankr. N.D. Ohio June 12, 2006).................................6, 12

*In re Editorial Flash, Inc.*,
   No. 14-ap-224, 2016 WL 3638471 (Bankr. D.P.R. June 29, 2016) .......................................12

*In re Global Aviation Holdings, Inc.*,
   478 B.R. 142 (Bankr. E.D.N.Y. 2012)..................................................................................12

*In re IDI Constr. Co., Inc.*,
   345 B.R. 60, 67 (Bankr.S.D.N.Y.2006)..................................................................................6

*In re Karen Louise Demko*,
   264 B.R. 404 (Bankr. W.D. Pa. 2001) ....................................................................................5

*In re KDI Holdings, Inc.*,
   277 B.R. 493, 511 (Bankr. S.D.N.Y. 1999)..........................................................................11

*In re PHS Grp. Inc.*,
    581 B.R. 16 (Bankr. E.D.N.Y. 2018) .............................................................................. passim

*In re Student Fin. Corp.*,
    335 B.R. 539 (D. Del. 2005) .................................................................................................5, 6, 7

*In re Student Fin. Corp.*,
    No. 02-11620 (DDS), 2006 WL 2346373 (D. Del. Aug. 10, 2006) ...............................6, 9, 12

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ...................................................................................................5

**STATUTES**

11 U.S.C. § 101(31)(B) ...................................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................4

Plaintiff James S. Feltman, not individually but solely as chapter 11 trustee ("Trustee" or "Plaintiff") for the bankruptcy estate of TS Employment, Inc. ("TSE"), respectfully submits this response in opposition to the motion ("Motion") (Dkt. No. 21) of Defendants Kossoff & Kossoff LLP ("K&K") and Irwin Kossoff ("Kossoff," and together with K&K, the "Defendants") to dismiss the Second Amended Complaint ("Complaint") (Dkt. No. 16). As set forth below, Defendants' Motion should be denied.

## PRELIMINARY STATEMENT

1.  Defendants cannot contest that they decided to create, and in fact created, the false financial records and inaccurate tax returns that hid tens of millions of dollars of unpaid TSE tax liabilities. Nor do they challenge that the Trustee has properly stated claims for accounting malpractice and fraud. Instead, the Defendants contend that they are shielded from liability for their own bad acts under the *Wagoner* rule and *in pari delicto* doctrine (the "imputation doctrines"), claiming that they are not are not insiders for purposes of the imputation analysis. Their arguments are unavailing.

2.  Defendants attempt to overcome the well-pled allegations in the Complaint by cherry-picking the new allegations, asserting that they are insufficient. Not only are Defendants wrong about the sufficiency of the new allegations, but the sufficiency of a complaint is measured by evaluating <u>all</u> of the facts that were pled in their totality, not just the new ones. The Trustee has pled more than sufficient facts to show that Defendants exercised such control over TSE's financial reporting and accounting functions that they should be deemed *de facto* insiders of TSE.

3.  Defendants dispute the Trustee's allegations about their near-exclusive control over financial and tax reporting functions that would have been performed by a chief financial officer, treasurer or controller, if TSE had any. But such denials have no proper place at the motion to

dismiss stage, where allegations are taken as true and must be construed in the light most favorable to the plaintiff. Defendants' assertion that Robert Cassera's control over TSE precludes a finding that Defendants are insiders also fails—a company obviously can have more than one insider, and whether Cassera or others exercised control over some aspects of TSE's business does not preclude a finding that Defendants controlled TSE's finance and accounting functions.

4.  Taking the Complaint's allegations as true and construed in the light most favorable to the Trustee, the Trustee has adequately alleged that Defendants were *de facto* insiders of TSE for imputation purposes. As such, the Motion should be denied.

## BACKGROUND

**A. Procedural History.**

5.  The Trustee filed this lawsuit to recover more than $100 million in losses that would have been avoided had Defendants not engaged in egregious accounting malpractice and fraud. (Dkt. Nos. 1, 3, 16.)

6.  After briefing and argument on Defendants' first motion to dismiss (Dkt. No. 13), the Court concluded that the complaint did not sufficient support an inference of the non-statutory insider exception to the *Wagoner* rule and *in pari delicto* doctrine (the "imputation doctrines"). *Feltman v. Kossoff & Kossoff LLP (In re TS Employment, Inc.)*, 597 B.R. 543, 552 (Bankr. S.D.N.Y. 2019). However, the Court allowed the Trustee to amend the complaint to allege additional facts demonstrating that the Defendants "acted effectively as TSE's CFO, Treasurer or other senior finance and accounting personnel, who made important accounting decisions that facilitated the massive fraud." *Id.*

7.  On March 28, 2019, the Trustee filed his Second Amended Complaint (Dkt. No. 16), and on May 14, 2019, the defendants again moved to dismiss. (Dkt. No. 21.)

**B. Defendants Controlled TSE's Financial Reporting and Accounting Functions.**

8.  The Complaint alleges that TSE was operated in a manner that concealed a multi-year scheme to defraud state and federal taxing authorities by systematically misreporting and failing to pay TSE's payroll tax obligations. (Compl. ¶ 6.) By the time TSE commenced its bankruptcy case on February 2, 2015, TSE's unpaid federal payroll tax liabilities had ballooned to more than $100 million, not including penalties or interest. (*Id.*)

9.  The Complaint alleges that TSE did not have a chief financial officer or treasurer. (*Id.* ¶ 38.) The Complaint further alleges that TSE did not have <u>any</u> employees who performed TSE's core financial reporting functions. (*Id.* ¶ 40.) The Complaint alleges that Defendants instead performed all of these functions; that they exercised direct, complete, and virtually exclusive control over the financial reporting systems, tax and internal accounting functions of TSE; and that they fulfilled the roles ordinarily carried out by a company's senior internal financial and accounting personnel. (*Id.* ¶¶ 38–40.)

10. The Complaint specifically alleges that Defendants acted with autonomy, and that their conduct was their own. (*Id.* ¶ 39.) It alleges that Defendants controlled, maintained, and made adjustments to TSE's books and records, and in fact decided how to account for the Debtor's business activities. (*Id.* ¶ 40.) The Complaint further alleges that effective as of the end of 2013, it was Defendants who decided to record a year-end intercompany general ledger entry which eliminated the $67 million federal payroll tax liability from TSE's books, and caused the $67 million federal payroll tax liability to be reflected on Tri-State's books. (*Id.* ¶ 52.) And in late 2014, it was Defendants who "reversed" the 2013 year-end general ledger entry, and caused the $67 million federal payroll tax liability to "re-appear" on TSE's financial statements. (*Id.* ¶ 55.) Thus, the Complaint does not allege that Defendants were mere outside accountants or outsourced

3

service providers who were not making executive-level decisions; the Complaint alleges that the Defendants were in fact the decision-makers with respect to TSE's financial reporting, tax and internal accounting functions.

11.    Defendants also compiled the underlying information needed to prepare federal and state income, payroll, and other tax returns, and prepared those returns. (*Id.* ¶ 42.). Again, the well-pled facts show that this was not a mere outsourcing relationship where a company compiles information and then turns it over to a tax preparation service; it was Defendants who made all material decisions concerning what information would be provided to federal and state taxing authorities—including false information that TSE's payroll taxes had been paid (*Id.* ¶ 53)—and then implemented their decisions through the tax returns they prepared and filed.

12.    The Complaint also alleges that Defendants interfaced independently and directly with TSE's auditor Lilling & Company concerning its audits of TSE's financial statements. The Defendants—not a TSE treasurer, chief financial officer or even Cassera—were the source of the information that was provided to TSE's auditors. (*Id.* ¶ 41.) Again, these functions normally would have been performed by a chief financial officer, treasurer, controller or other insider, and are thus indicative of the roles actually played by the Defendants.

## **DISCUSSION**

### **I.    Legal Standard**

13.    The Court must deny a motion to dismiss where the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* For a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the

4

Court must similarly "accept[] all allegations in the complaint as true, and draw[] all reasonable inferences in plaintiffs' favor." *Rothstein v. UBS AG*, 708 F.3d 82, 90 (2d Cir. 2013). "Detailed factual allegations" are not required, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555), and factual disputes are not resolved on a motion to dismiss. *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

**II.    The Imputation Doctrines Are Inapplicable Because Defendants Were TSE Insiders.**

14.    Defendants do not contest that the Complaint adequately alleges malpractice/negligence and fraud claims. Instead, Defendants attempt to shield themselves from liability by claiming that they were not *de facto* insiders, and that therefore the insider exception to the imputation doctrines does not apply.

15.    The imputation doctrines do not protect insiders. *In re Student Fin. Corp.*, 335 B.R. 539, 547 (D. Del. 2005). "The insider exception derives from the notion that it would be inequitable to allow an insider to rely on [*in pari delicto*] imputation because it would essentially shield the insider from the consequences of their own handiwork." *In re PHS Grp. Inc.*, 581 B.R. 16, 30–31 (Bankr. E.D.N.Y. 2018) (internal citations and quotation marks omitted); *accord Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 122 (Bankr. S.D.N.Y. 2011).

16.    Under the Bankruptcy Code, "insider" means a "director of the debtor; officer of the debtor; person in control of the debtor; partnership in which the debtor is a general partner, general partner of the debtor; or relative of a general partner, director, officer, or person in control of the debtor." 11 U.S.C. § 101(31)(B). The Code's insider definition is not exhaustive, however, and a person's title does not prescribe their insider status. Rather, "[a]ny person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny may qualify as an 'insider.'" *In re Karen Louise Demko*, 264 B.R. 404, 408 (Bankr. W.D. Pa.

5

2001); s*ee also PHS Grp.*, 581 B.R. at 32 ("[A] person's deliberate divesting of any formal title and position in a company should not, without closer inspection, dictate that he be deemed a third party, non-insider.").

17. Third-party professionals may be considered insiders depending on the closeness of their relationship with the debtor and their involvement in its affairs. *See, e.g.*, *In re Chari*, 276 B.R. 206, 212 (Bankr. S.D. Ohio 2002) (allegations that "employee-bookkeeper" who had a "close working relationship" with Debtors and had "knowledge of the inner workings of the business" sufficiently alleged insider status at motion to dismiss stage); *In re Cont'l Capital Inv. Servs., Inc.*, No. 03-3370, 2006 WL 6179374, at *4 (Bankr. N.D. Ohio June 12, 2006) (allegations that "retained counsel" who "knew of, and aided and/or participated in the various fraudulent schemes involving Debtors" based on his "working relationship with Debtors, their officers/directors, and their parent company" sufficiently alleged insider status at motion to dismiss stage). Third parties may also be deemed insiders under non-bankruptcy law. *See In re Student Fin. Corp.*, No. 02-11620 (DDS), 2006 WL 2346373, at *1 (D. Del. Aug. 10, 2006) (denying outside accountant's *in pari delicto* defense at motion to dismiss stage due to accountant's close relationship with debtor); *In re IDI Constr. Co., Inc.*, 345 B.R. 60, 67 (Bankr. S.D.N.Y. 2006) (holding that *in pari delicto* did not bar a claim against a titular "consultant" involved in the debtor's fraud).

18. At bottom, the inquiry into insider status "is fact-intensive and can be made only on a case-by-case basis." *Student Fin. Corp.*, 335 B.R. at 547 (citation omitted). It is "based on the totality of the circumstances, including the degree of an individual's involvement in a debtor's affairs." *PHS Grp.*, 581 B.R. at 33.

19. The burden falls on the plaintiff to establish that defendants are insiders. *Id.* at 31. At the motion to dismiss stage, this only requires that plaintiff's well-pleaded factual allegations

6

state a "plausible claim for relief." *Kossoff & Kossoff LLP*, 597 B.R. at 548 (quoting *Iqbal*, 556 U.S. at 679).  Where a complaint includes factual allegations supporting insider status, dismissal is inappropriate and insider status should be determined "only after full discovery." *Student Fin. Corp.*, 335 B.R. at 547.

### A. The Complaint Plausibly Alleges the Defendants' Insider Status.

20.     Defendants claim that the Trustee's allegations are "entirely conclusory and not entitled to credit." (Mot. ¶ 28 (citing *In re Hydrogen, LLC*, 431 B.R. 337, 346 (Bankr. S.D.N.Y. 2010))).  However, a statement is only conclusory "if it provides a conclusion but no underlying facts in support of the conclusion." *Edwards v. Fed. Nat'l Mortg. Ass'n*, 545 S.W.3d 169, 178 (Tex. App. 2017).  Contrary to Defendant's assertion, the Complaint alleges numerous underlying facts, including:

- "Defendants performed a wide range of accounting and related services for Tri-State and TSE, including performing many of their core financial reporting functions." (Compl. ¶ 36.)

- "[Kossoff and Cassera] met frequently concerning Tri-State and Cassera's businesses, and Kossoff was regularly consulted about all financial matters involving Tri-State and Cassera's other businesses." (*Id.* ¶ 37.)

- "TSE did not have a CFO or Treasurer." (*Id.* ¶ 38.)

- "TSE or Tri-State [had no] employees with the background and experience to report the entities' multi-billion dollar cash flow." (*Id.*)

- "Defendants exercised direct, complete, and virtually exclusive control over the financial reporting systems, tax and internal accounting functions of TSE . . . ." (*Id.*)

- "[Defendants] fulfilled the roles ordinarily carried out by a company's senior internal financial and accounting personnel." (*Id.*)

- "Defendants acted with autonomy, and their conduct was their own." (*Id.* ¶ 39.)

- "[Defendants'] decisions facilitated TSE's massive fraud." (*Id.*)

7

- "Defendants managed TSE's financial reporting, tax and internal accounting activities . . . ." (*Id.*)

- "[Defendants] exerted unfettered influence over decisions that affected the Debtor's finances and operations." (*Id.*)

- "Defendants controlled, maintained, and made adjustments to TSE's books and records and financial reporting systems . . . ." (*Id.* ¶ 40.)

- "[Defendants] decided how to account for the Debtor's business activities." (*Id.*)

- "Kossoff explained how he caused a year-end intercompany general ledger entry to be recorded eliminating the $67 million federal payroll tax liability on TSE's books, and causing the $67 million federal payroll tax liability to be reflected on Tri-State's books." (*Id.* (citing Kossoff Decl. ¶ 16 (Dkt. 16-2)).)

- "Defendants . . . interfaced independently and directly with TSE's auditor Lilling & Company concerning its audits of TSE's finances for years ended December 31, 2012 and December 31, 2013." (*Id.* ¶ 41.)

- "Defendants were the source of the information needed for TSE's auditors to perform those audits, and information requests were directed at Defendants, not others at TSE." (*Id.*)

- "Defendants . . . prepared all of the federal and state income, payroll, and other tax returns for TSE, and compiled the underlying information needed to prepare those returns." (*Id.* ¶ 42.)

- "Effective as of the end of 2013, Defendants recorded a year-end intercompany general ledger entry which eliminated the $67 million federal payroll tax liability from TSE's books, and caused the $67 million federal payroll tax liability to be reflected on Tri-State's books." (*Id.* ¶ 52.)

- "Defendants also masked TSE's non-payment of its critical payroll tax liabilities by causing TSE to file inaccurate tax returns." (*Id.* ¶ 53.)

- "Defendants prepared and filed on TSE's behalf Form 941 returns indicating that all of TSE's payroll taxes had been paid, when in fact they had not." (*Id.*)

- "On January 30 and 31, 2015, as TSE's bankruptcy case was being filed, Defendants made a series of large journal entries on TSE's general ledger in the TSE/Tri-State intercompany account, which they dated as of December 31, 2014. Those entries had the effect of purporting to transform the large intercompany balance owed by Tri-State into a net liability to Tri-State owed by TSE." (*Id.* ¶ 60.)

8

- "Kossoff further adjusted these entries in March 2015, subsequent to TSE's chapter 11 filing." (*Id.* ¶ 61.)

These are not mere conclusions, but rather solid factual allegations for which all reasonable inferences must be drawn in the Trustee's favor.

21.    Apparently recognizing that the Complaint alleges the facts needed to establish insider status, Defendants shift to attempting to discredit the facts. Defendants assert that their direct, independent, and continuous interaction with TSE's auditor is not relevant to insider status, seizing on the Court's statement that some businesses "hire one accounting firm to do their internal accounting and then maybe if they have audited financials, another firm to the do the audit" to suggest that Defendants' relationship with Lilling was typical of an external accountant rather than an insider. (Mot. ¶ 29 (quoting Feb. 11, 2019 Hr'g Tr. at 19:22–25).) But this argument overlooks the point of both these allegations and the Court's statement. External accountants and other outsourced service providers typically do not engage in executive-level financial reporting, tax, and accounting activities (such as acting as management's interface with outside auditors)—and when they cross that line, they can be found to be insiders. *See Student Fin. Corp.*, 2006 WL 2346373, at *3 (trustee's allegation that outside accountant "was aware of [corporation's] fraudulent scheme . . . but continued to work closely with the corporation and was actively involved in the preparation and validation of its allegedly misleading financial reports" adequately pled insider status).

22.    Defendants also challenge the facts reasonably drawn from Kossoff's own declaration. Defendants posit that because the Kossoff Declaration uses the passive voice, the declaration therefore contradicts the Complaint's allegations that Kossoff made the fraudulent journal entries. (Mot. ¶¶ 30–31.) At best, this raises a factual dispute about who made the fraudulent journal entries, an issue that is not susceptible to resolution on a motion to dismiss.

9

Likewise, Kossoff's declaration statement that Yolanda Trippiedi "supervises the bookkeeping department of the debtor" (Kossoff Decl. ¶ 7) is not inconsistent with the Complaint's factual allegation that no Tri-State or TSE employees exercised executive-level control over TSE's financial reporting and accounting functions. The fact that this billion-dollar enterprise had "bookkeepers" who maintained day-to-day business records, and processed and paid temporary worker payroll and invoices, is hardly dispositive of the issue of whether the Defendants in fact controlled the Debtor's financial reporting and accounting functions. Again, at most Defendants' arguments raise a factual dispute concerning Ms. Trippiedi's role at the business.

### B. Cassera's Control Over TSE Does Not Impact the Insider Analysis.

23.     Defendants seize on the Trustee's acknowledgement of Cassera's control over TSE to argue that Defendants therefore are categorically precluded from being insiders. (Mot. ¶¶ 34–40.) The Trustee does not dispute that Cassera exercised control over TSE by virtue of his ownership of the business. However, this does not mean that other individuals or entities did not also control key aspects of the business. Not surprisingly, Defendants cite no case law standing for the proposition that when an entity is owned or controlled by one individual, that no other persons can be deemed insiders. To the contrary, courts routinely find insider status established notwithstanding another party's control over a debtor. *See PHS Grp.*, 581 B.R. at 34 (rejecting argument that defendant could not be insider because of CEO's control of the debtor; consultant's conduct and relationship with the debtor established insider status); *see also Bernard L. Madoff Inv. Sec.*, 458 B.R. at 124 (complaint adequately alleged defendants in senior management positions were insiders for imputation purposes, notwithstanding defendants' contentions that Bernard Madoff controlled all aspects of the fraud).

10

### C. The Second *PHS* Factor Supports an Insider Finding.

24.     Defendants maintain that they are not insiders under the second *PHS* factor—"degree of involvement" with the debtor's affairs. (Mot. ¶¶ 41–44.) The *PHS* court explained this requires allegations that "indicate something more than the monitoring of a debtor's operations and proffering advice to management." *PHS Grp.*, 581 B.R. at 32–33 (quoting *In re KDI Holdings, Inc.*, 277 B.R. 493, 511 (Bankr. S.D.N.Y. 1999)). Judge Grossman found the second factor satisfied where, among other things, a defendant who had the titular role of "consultant" "transferred large amounts of money" between the accounts of the debtor and its subsidiary, permitted the debtor to fund its subsidiary's operations, and engaged in discussions with the debtor's attorney. *Id.* at 34. The factor was satisfied for another defendant who "had check writing authority, managed the Debtor's accounts payable, and signed off on invoices and approved sales." *Id.* at 37.

25.     Here, Defendants' actions went far beyond "monitoring of a debtor's operations and proffering advice to management." *Id.* at 32-33. As pled in the Complaint, Defendants decided how to account for the Debtor's business activities (Compl. ¶ 40); prepared the company's financial statements based upon the decisions they made (*Id.* ¶¶ 39, 72, 74); acted of their own volition to hide hundreds of millions of dollars in TSE's unpaid tax liabilities (*Id.* ¶¶ 40, 55); interfaced independently and directly with TSE's auditor Lilling & Company concerning its audits of TSE's finances (*Id.* ¶ 41); and decided what information would be included in and reported on TSE's federal and state income, payroll, and other tax returns for TSE, including the returns containing false or incorrect information. (*Id.* ¶¶ 42, 53.) They answered to no one, and acted on their own. Thus, the second *PHS* factor weighs heavily in favor an insider finding.

11

**D. Defendants' Ostensible Position as Outside Accountants Is Irrelevant.**

26. Finally, Defendants argue that the Complaint should be dismissed because the Trustee did not adduce case law in which outside accountants were found to be non-statutory insiders. (*See* Mot. ¶ 45.) This argument is a red herring. Defendants' cases stand for the unremarkable proposition that merely acting as an outside accountant does not confer insider status.[1] However, the very purpose of a non-statutory insider analysis is to look beyond official titles to the actual relationship between the defendant and the debtor. *PHS Grp.*, 581 B.R. at 32 ("an employee's title alone will not dictate their status as an insider for *Wagoner* purposes"); *In re Global Aviation Holdings, Inc.*, 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) ("The label an employer chooses to attach to a position is not dispositive for purposes of insider analysis"). The analysis is not limited to employees, and outside professionals can be deemed insiders. *See, e.g.*, *Student Fin. Corp.*, 2006 WL 2346373, at *3 (plaintiff plausibly alleged outside accountant was insider); *Chari*, 276 B.R. at 212 ("employee-bookkeeper"); *Cont'l Capital Inv. Servs*, 2006 WL 6179374, at *4 ("retained counsel"). Thus, whether Defendants held the title of TSE's outside accountants or its chief dog-walker is of no moment—it is their conduct and relationship with the Debtor that demonstrates their insider status.

---

[1] In *In re 7th St. & Beardsley P'ship*, 181 B.R. 426 (Bankr. D. Ariz. 1994), a creditor alleged that an outside accountant was an insider for section 1129(a)(10) plan voting purposes because the accountant was interested in continued business with the debtors and "overly influenced" by the debtors. The court found no evidentiary support for these claims. *Id.* at 432. In *In re Editorial Flash, Inc.*, No. 14-ap-224, 2016 WL 3638471 (Bankr. D.P.R. June 29, 2016)), the court concluded an outside accountant was not an insider because plaintiff made "no allegation whatsoever as to how Defendant's relationship with Debtor allowed him to exert control or influence over the latter." *Id.* at *3.

12

## CONCLUSION

For the reasons set forth above, the Trustee respectfully requests that the Defendants' motion to dismiss be denied.

Dated: May 31, 2019
       New York, New York

Respectfully submitted,

/s/ Vincent E. Lazar
Vincent E. Lazar
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Tel. (312) 222-9350
Fax (312) 527-0484
vlazar@jenner.com

Richard Levin
Carl Wedoff
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022
Tel. (212) 891-1600
Fax (212) 909-0815
rlevin@jenner.com
cwedoff@jenner.com

*Attorneys for the Chapter 11 Trustee*