**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TS EMPLOYMENT, INC.,<br><br>Debtor. | **FOR PUBLICATION**<br><br>Case No. 15-10243 (MG)<br><br>Chapter 11 |
| JAMES S. FELTMAN, not individually but solely as chapter 11 trustee for TS EMPLOYMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>Kossoff & Kossoff LLP and Irwin Kossoff,<br><br>Defendants. | Adv. Case No. 18-01649 (MG) |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM**

*A P P E A R A N C E S:*

JENNER & BLOCK LLP
*Attorneys for Plaintiff*
919 Third Avenue
New York, NY 10022
 By:   Vincent E. Lazar, Esq.
       Richard Levin, Esq.
       Carl N. Wedoff, Esq.

STORCH AMINI PC
*Attorneys for Defendants*
140 East 45th Street, 25th Floor
New York, New York 10017
 By:   Steven G. Storch, Esq.
       Jeffrey Chubak, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion ("Motion," ECF Doc. # 21) to dismiss the second amended complaint ("Second Amended Complaint," ECF Doc. # 16) filed by defendants Kossoff & Kossoff LLP and its principal Irwin Kossoff (collectively, "Defendants"). The Chapter 11 Trustee of TS Employment, Inc. ("TSE" or "Debtor"), plaintiff, James S. Feltman ("Trustee"), filed an opposition to the Motion. ("Trustee Opposition," ECF Doc. # 23.) Defendants filed a reply. (ECF Doc. # 25.) The issue here is whether the Second Amended Complaint sufficiently alleges that the Defendants meet the non-statutory insider exception to the *Wagoner* rule.

"The so-called *Wagoner* rule stands for the well-settled proposition that a bankrupt corporation, and by extension, an entity that stands in the corporation's shoes, lacks standing to assert claims against third parties for defrauding the corporation where the third parties assisted corporate managers in committing the alleged fraud." *In re Platinum-Beechwood Litig.*, No. 18-CV-10936 (JSR), 2019 WL 2569653, at *2 (S.D.N.Y. June 21, 2019) (quoting *Cobalt Multifamily Inv'rs I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 425 (S.D.N.Y. 2012)). There are two exceptions to the *Wagoner* rule: First, under the "insider exception," courts have held that "*in pari delicto*/*Wagoner* does not apply to the actions of fiduciaries who are insiders in the sense that they either are on the board or in management, or in some other way control the corporation." *In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2010 WL 6549830, at *16 (S.D.N.Y. Dec. 6, 2010), *report and recommendation adopted in part, rejected in part on other grounds sub nom. In re Refco Sec. Litig.*, 779 F. Supp. 2d 372 (S.D.N.Y. 2011), *aff'd sub nom. Krys v. Butt*, 486 F. App'x 153 (2d Cir. 2012); *see Glob. Crossing Estate Representative v. Winnick*, No. 04 Civ. 2558 (GEL), 2006 WL 2212776, at *15 (S.D.N.Y. Aug. 3, 2006) ("Courts have held that the *Wagoner* . . . rules do not apply to claims against corporate insiders for breach

2

of their fiduciary duties.").[1]

The usual application of the insider exception deals with directors, officers and managers of a corporation. The Defendants here are not directors, officers or managers. This case involves the recognized extension of the insider exception to non-statutory insiders "who in some other way control the corporation." *In re Refco*, 2010 WL 6549830, at *16. For the reasons explained below, the Court concludes that the Second Amended Complaint sufficiently alleges that the Defendants were non-statutory insiders, and, therefore, the Motion is **DENIED**.

## I. BACKGROUND

### A. Procedural History

The Trustee commenced the adversary proceeding against the Defendants here, who were TSE's former accountants. Defendants allegedly caused TSE and its creditors to lose more than $100 million before TSE filed for bankruptcy protection in February 2015. (Second Amended Complaint ¶ 1.)

On October 5, 2018, the Trustee filed an initial complaint ("Initial Complaint," ECF Doc. # 1) against the Defendants. Defendants filed a motion to dismiss, arguing that the Trustee's claims are barred by the *Wagoner* rule. ("First Motion to Dismiss," ECF Doc. # 8.) The Court granted the First Motion to Dismiss, concluding that the complaint did not sufficiently support an inference that Defendants fell within the non-statutory insider exception to the *Wagoner* rule. *Kossoff*, 597 B.R. at 552 [hereinafter *Prior Opinion*]. The Court also rejected the Trustee's argument that the adverse interest exception applied. The dismissal of the Initial Complaint was

---

[1]    The second exception to the *Wagoner* rule is the "adverse interest" exception, which this Court already rejected when it dismissed the Initial Complaint in this case. *Feltman v. Kossoff & Kossoff LLP (In re TS Empl., Inc.)*, 597 B.R. 543, 553 (Bankr. S.D.N.Y. 2019). This exception applies "where the corporation is actually the victim of a scheme undertaken by the agent to benefit himself or a third party personally, which is therefore entirely opposed (i.e., 'adverse') to the corporation's own interests." *Id.* at 552.

3

without prejudice and the Trustee was allowed to amend the Initial Complaint to allege additional facts demonstrating that Defendants "acted effectively as TSE's CFO, Treasurer or other senior finance and accounting personnel, who made important accounting decisions that facilitated the massive fraud." *Id.*

On March 28, 2019, the Trustee filed the Second Amended Complaint, and on May 14, 2019, the Defendants again moved to dismiss.

### B.   Statement of Facts

Until its bankruptcy, TSE served as the professional employer organization ("PEO") for Corporate Resource Services, Inc. ("CRS") and its subsidiaries ("CRS Subsidiaries" and, together with CRS, "CRS Debtors"). The CRS Debtors were publicly traded companies. As the PEO, TSE was the employer of record for hundreds of thousands of temporary workers supplied under the CRS Debtors' contracts with their customers. (Second Amended Complaint ¶ 2.)

CRS experienced dramatic growth from 2010 to 2015 by offering its customers competitive pricing and financing options. CRS's ability to rapidly expand its business largely depended on purported financial accommodations made by TSE, including the forgiveness or deferral of more than $70 million owed to TSE under its PEO agreement with CRS. (*Id.* ¶ 3.)

TSE never had the capital or liquidity needed to make financial accommodations to CRS. TSE "financed" its accommodations to CRS by failing to pay federal employment taxes for TSE employees that were supplied to CRS customers. Moreover, most of TSE's funds were commingled with those of its affiliate, Tri-State Employment Service, Inc. ("Tri-State"), where tens of millions of dollars were used for purposes unrelated to TSE. As a result, TSE ultimately failed to pay more than $100 million (exclusive of interest and penalties) in federal employment tax obligations, as well as other non-tax obligations. (*Id.* ¶¶ 4-5.) Defendants' actions hid this

4

reality from the outside world, thus permitting TSE to continue to amass unpaid liabilities while its corporate life was wrongfully prolonged. (*Id.* ¶ 7.)

From 2011 forward, TSE was insolvent and engaged in an unsustainable and under-capitalized business. TSE had no chief financial officer or treasurer to carry out its core financial and accounting operations. Instead, these functions were performed by Defendants, who allegedly exercised direct, complete, and virtually exclusive control over the financial reporting systems and internal accounting functions of TSE. (*Id.* ¶ 6.)

### C.     Second Amended Complaint

The Trustee attempts to cure the insufficiency in the Initial Complaint by alleging the following new allegations in the Second Amended Complaint to support the inference that Defendants were non-statutory insiders: (1) "[a]t all relevant times, TSE did not have a CFO or Treasurer" (*id.* ¶ 37); (2) "Defendants also interfaced independently and directly with TSE's auditor . . . [and] were the source of the information needed for TSE's auditors to perform those audits" (*id.* ¶ 41); (3) "Defendants exercised direct, complete, and virtually exclusive control over the financial reporting systems, tax and internal accounting functions of TSE and fulfilled the roles ordinarily carried out by a company's senior internal financial and accounting personnel" (*id.* ¶ 38); (4) "Defendants acted with autonomy, and their conduct was their own" (*id.* ¶ 39); (5) "Defendants . . . exerted unfettered influence over decisions that affected the Debtor's finances and operations" (*id.* ¶ 39); (6) "Defendants . . . decided how to account for the Debtor's business activities" (*id.* ¶ 40); and (7) "TSE was operated in a manner that concealed a multi-year scheme to defraud the United States Treasury by systematically misreporting payroll tax obligations. This fraudulent and coordinated scheme required carefully managed financial

5

reporting and false tax reporting activities which were performed and overseen by Irvin (*sic*) Kossoff." (*Id.* ¶ 4.)

### D. Defendants' Motion to Dismiss

First, Defendants argue that the Trustee repeated allegations found in the Initial Complaint and failed to plausibly plead "additional facts that can be alleged in good faith demonstrating that these Defendants acted effectively as TSE's CFO, Treasurer or other senior finance and accounting personnel . . . ." (Motion ¶ 2.)

Second, Defendants argue that the allegations that they exercised total control over TSE's internal accounting functions, acted with complete autonomy, and exerted unfettered influence over decisions that affected the Debtor's operations are entirely conclusory. Defendants therefore contend that these allegations are not entitled to credit on a motion to dismiss. (*Id.* ¶ 4.)

Third, Defendants argue that the allegation that they functioned as TSE's management is inconsistent with the Trustee's separate allegation, remaining from the Initial Complaint, that TSE's and Tri-State's owner, Robert Cassera ("Cassera"), totally controlled TSE and was the mastermind of the subject fraud. (*Id.*)

Finally, Defendants argue that the complaint does not allege the necessary degree of control over the Debtor's affairs to be considered an insider, even if, as the Trustee alleges, Defendants controlled TSE's internal accounting functions. In support of this point, they argue that the alleged control is not the same as "dictat[ing] corporate policy and the disposition of corporate assets" particularly where, as here, the complaint alleges that TSE was controlled by Cassera. (*Id.* ¶¶ 43-44.)

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a complaint need only allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis removed)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). "The question in a Rule 12 motion to dismiss is 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 320 (S.D.N.Y. 2015) (citing *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012)).

Courts use a two-pronged approach when considering a motion to dismiss. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678-79); *McHale v. Citibank, N.A. (In re the 1031 Tax Grp., LLC)*, 420 B.R. 178, 189-90 (Bankr. S.D.N.Y. 2009). First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb. *See, e.g., Iqbal*, 556 U.S. at 677-78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). Second, the court must determine if these

7

well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). A complaint that pleads only facts that are "merely consistent with" a defendant's liability does not meet the plausibility requirement. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

### III.    DISCUSSION

#### A.    Applicability of the *Wagoner* Rule to the Trustee's Second Amended Complaint

It is a "fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation." *Wight v. Bank of America Corp.*, 219 F.3d 79, 86 (2d Cir. 2000). The rationale for the imputation of wrongdoing by managers to the corporation is the presumption that agents disclose material facts to their principals and "thus any misconduct engaged in by a manager is with – at least – his corporation's tacit consent." *In re CBI Holding Co., Inc.*, 529 F.3d 432, 448 (citing *Ctr. v.*

8

*Hampton Affiliates, Inc.*, 488 N.E.2d 828 (N.Y. 1985)). As such, wrongdoing by management of a corporation is imputed to the corporation.

Under the Bankruptcy Code, a trustee "stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 119 (2d Cir. 1991). Because the trustee "stands in the shoes" of the corporation, wrongdoing of the corporation is in-turn imputed to him. *Id.* To this effect, the *Wagoner* rule states that "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to the creditors, not to the guilty corporation." *Wagoner*, 944 F.2d at 120; *see In re PHS Grp. Inc.*, 581 B.R. 16, 30 (Bankr. E.D.N.Y. 2018). The *Wagoner* rule eliminates the standing of a trustee to sue "to recover for a wrong that he himself essentially took part in." *Wight*, 219 F.3d at 87.

The Trustee acknowledges that the Debtor, TSE, for which he is chapter 11 trustee, engaged in misconduct. The Trustee states that "TSE 'financed' its accommodations to CRS by willfully failing to pay federal employment taxes for TSE employees that were supplied to CRS customers, as well as other obligations." (Second Amended Complaint ¶ 5.) The Trustee alleges that Defendants participated in this scheme by "hid[ing] TSE's financial condition from the outside world, thus permitting TSE to continue amass[ing] unpaid liabilities." (*Id.* ¶ 7.) The Trustee also specifically alleges that Defendants, in their capacity as TSE accountants, executed the scheme by making false representations related to federal and state tax preparation, eve-of-bankruptcy journal entries, and additional malfeasance. (*Id.* ¶¶ 98-105.) Taking the complaint as a whole, the Trustee alleges that Defendants participated in the same misconduct for which the corporation, and therefore the Trustee, stands accused.

9

If Defendants are third-parties, then the Second Circuit's *Wagoner* rule bars the Trustee from pursuing claims against the Defendants. *Wagoner*, 944 F.2d at 120; *see also Wight*, 219 F.3d at 87. However, the Trustee correctly explains that the *Wagoner* rule does not apply to insiders. (Trustee Opposition ¶ 15). The Trustee argues that the Court should consider the Defendants insiders and therefore not subject to the *Wagoner* rule.

**B.    Non-Statutory Insider Exception to the *Wagoner* Rule**

1. The Non-Statutory Insider Standard and Prior *Kossoff* Opinion

The *Wagoner* rule does not apply to insiders. *In re Optimal U.S. Litig.*, 813 F. Supp. 2d, 383, 400 (S.D.N.Y. 2011) ("*[I]n pari delicto* does not apply to the actions of fiduciaries who are insiders in the sense that they are on the board or in management, or in some other way control the corporation." (internal citations omitted)); *see also In re Madoff Sec.*, 987 F. Supp. 2d, 311, 322 (S.D.N.Y. 2013). If the Trustee properly pleads facts supporting the characterization of the Defendants as insiders, then standing to pursue claims against the Defendants will be permitted. *In re PHS*, 581 B.R. at 31 ("Thus, a trustee, standing in the shoes of a debtor, is permitted to assert claims against the corporate debtor's insiders when there is an alleged injury to the debtor.") (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 122 (Bankr. S.D.N.Y. 2011)). Therefore, the question before the Court is whether the Second Amended Complaint sufficiently alleges that Defendants are insiders of the Debtor.

The statutory definition of an insider provided by the Bankruptcy Code § 101(31) reads in relevant part:

> The term "insider" includes—
> . . .
> (B) if the debtor is a corporation—
> (i) director of the debtor;
> (ii) officer of the debtor;
> (iii) person in control of the debtor;

10

>  (iv) partnership in which the debtor is a general partner
>  (v) general partner of the debtor; or
>  (vi) relative of a general partner, director, officer or person in control of the debtor . . . .

11 U.S.C. § 101(31). The statutory definition of insider is neither exclusive nor exhaustive and persons with titles not specifically described by section 101(31)(B) may be considered insiders. *In re PHS,* 581 B.R. at 31 ("Courts, recognizing that this statutory definition was not intended to be an exhaustive or exclusive list of roles that may qualify a person for insider status, have developed the notion of a 'non-statutory' insider.")

While the insider designation has various implications within different bankruptcy proceedings, within the context of the *Wagoner* rule, "courts have defined 'insider' as one that is 'on the board or in management, or in some way control[s] the corporation.'" *Id.* (quoting *In re Refco*, 2010 WL 6549830, at *16); *In re KDI Holdings, Inc.*, 277 B.R. 493, 511 (Bankr. S.D.N.Y. 1999) (holding that a party will be held to an insider standard where it is found that the party dominated and controlled the debtor.)

Courts will determine whether a party is an insider on an individualized basis based on the "totality of the circumstances." *In re Borders Grp., Inc.*, 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011). Insider status has been partially defined as an ability to "exercise sufficient authority over the debtor to dictate corporate policy and the disposition of corporate assets or have at least a controlling interest in the debtor." *In re PHS*, 581 B.R. at 32 (internal citations omitted). In arguing that a party should be considered an insider, "the allegations must indicate something more than the monitoring of a debtor's operations and proffering advice to management." *In re KDI*, 277 B.R. at 511.

11

The *PHS* court distilled the relevant case law to a non-exclusive list of factors for courts to consider:

> (1) the close relationship between the debtor and the third party, *In re 455 CPW Assocs.*, No. 99-5068, 2000 WL 1340569, at *5 (2nd Cir. Sept. 14, 2000) (finding an insider as one who has a sufficiently close relationship to the Debtor that his conduct is subject to closer scrutiny); (2) the degree of the individual's involvement in the debtor's affairs, *In re Borders, Inc.*, 453 B.R. at 469; (3) whether the defendant had opportunities to self-deal, *In re ABC Elec. Servs.*, 190 B.R. 672 (Bankr. M.D. Fla. 1995); and (4) whether the defendant holds or held a controlling interest in the debtor corporation, *In re Borders*, 453 B.R. at 469.

*In re PHS*, 581 B.R. at 33.

In the *Prior Opinion*, this Court found that Defendants' close relationship to the Debtor weighed in favor of a finding of insider status but was insufficient to determine insider status without the inclusion of additional facts. *Kossoff*, 597 B.R. at 551. The allegations regarding the Defendants' relationship to the Debtor are repeated in the Second Amended Complaint. They include a long-term professional relationship between the Defendants and the Debtor, the Defendants' work across Cassera's businesses, and the Defendants' regular private jet travel from Florida to New York with Cassera. Those allegations support an inference that there was a close relationship between the Debtor and the Defendants. (Second Amended Complaint ¶¶ 16 & 37.)

The Trustee cites case law that purportedly indicates satisfaction of the first factor alone is sufficient to warrant a finding of insider status. *In re Cont'l. Capital Inv. Servs', Inc.*, 03-3370, 2006 WL 6179374, at *13-14 (Bankr. N.D. Ohio June 12, 2006); *In re Chari*, 276 B.R. 206, 212 (Bankr. S.D. Ohio 2002). The Trustee fails to highlight that the defendant in *In re Cont'l.* was found to have a "personal relationship" with the debtor and participated in "various fraudulent schemes involv[ing] [the] [d]ebtors." *In re Cont'l.*, 2006 WL 6179374, at *14.

12

Unlike the plaintiff in *In re Cont'l.*, the Trustee has not alleged that Defendants had a personal relationship with the Debtor, or that the Debtor and Defendants participated in more than one fraudulent scheme together. Similarly, the facts of *In re Chari* are distinct from the case at-hand as *Chari* involved a defendant who was "friends of [the] [d]ebtor" and who participated in a number of fraudulent transactions directly with the debtor "without adequate consideration." *In re Chari* 276 B.R. at 209. In the *Prior Opinion*, the Court held that while consideration of the first-factor weighed in favor of non-statutory insider status, additional allegations would be required for the Court to consider Defendants as non-statutory insiders. *Kossoff*, 597 B.R. at 552.

### 2. Second *PHS* Factor Weighs in Favor of Non-Statutory Insider Status

The allegations made by the Trustee against Defendants support an inference that Defendants meet the required level of control to satisfy the non-statutory insider exception to the *Wagoner* rule. Specifically, the Trustee satisfies the second factor's "degree of involvement" requirement by plausibly alleging that Defendants fulfilled the role of a CFO or Treasurer to the extent that they were "making decisions regarding how to account for the Debtor's business activities," and that Defendants "exerted significant influence over decisions that affected the Debtor's operations." *Id*. at 551.

When determining a third party's degree of involvement in a Debtor's affairs, courts consider the "totality of the circumstances." *In re Borders*, 453 B.R. at 469. The Court must consider whether Defendants "exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Id.* (quoting *In re Babcock Dairy Co.*, 70 B.R. 657, 661 (Bankr. N.D. Ohio 1986); *see also In re 9281 Shore Road Owners Corp.*, 187 B.R. 837, 853 (E.D.N.Y. 1995).

13

In the Second Amended Complaint, the Trustee alleges that TSE did not employ a CFO, Treasurer, or other accounting personnel. (Second Amended Complaint ¶ 6.) Instead, all accounting "functions were performed by Defendants, who ostensibly acted as Tri-State's and TSE's outside accountants but exercised direct, complete, and virtually exclusive control over the financial reporting systems and internal accounting functions of TSE." (*Id.*) The Trustee alleges that Defendants utilized their control over TSE's accounting and financial reporting systems to "exert unfettered influence over decisions that affected the Debtor's finances and operations." (*Id.* ¶ 39.) Rather than acting as outside advisors to TSE, the Trustee alleges that the Defendants "exercised decisionmaking (*sic*) authority over financial matters involving TSE, Tri-State, and other Cassera businesses." (*Id.* ¶ 7.) Exercising decision making authority over the Debtor concerning financial matters clearly qualifies for insider-status according to the standard followed by this Court. *See In re Borders*, 453 B.R. at 469 ("[I]nsiders must have . . . sufficient authority over the debtor so as to unqualifiably dictate corporate policy . . . ."); *see also In re KDI*, 277 B.R. at 511 ("[T]he allegations must indicate something more than the monitoring of a debtor's operations and proffering advice to management . . . .") Taken as a whole, the Second Amended Complaint alleges that Defendants acted as the *de facto* CFO of TSE and thus satisfies the doctrine of the non-statutory insider exception.

It is a well-established principle that "an employee's title alone will not dictate their status as an insider for *Wagoner* purposes." *In re PHS*, 581 B.R. at 32; *see also In re Glob. Aviation Holdings, Inc.*, 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) ("The label an employer chooses to attach to a position is not dispositive for purposes of insider analysis because companies often give employees the title 'director' or 'director-level' but do not give them decision-making authority akin to an executive" (internal citations omitted)); *In re Borders*, 453

14

B.R. at 468-69 ("An individual's title, by itself is insufficient to establish that an individual is a director or officer."). The *Wagoner* rule was not fashioned to encourage otherwise statutory insiders to eschew official titles as a means to evade potential liability. Thus, the logical question for the Court to address is whether Defendants can be considered insiders who could not assert the *Wagoner* rule as a defense if they stood accused of the same misconduct *and* had the title of CFO or Treasurer. The Defendants' counsel effectively conceded that it is the lack of formal title that prevents a finding of insider status, rather than allegations that Defendants had sufficient control over the Debtor.[2] However, case law concerning the non-statutory insider exception clearly states that it is *control* over the Debtor, rather than formal title, that determines whether Defendants can assert the *Wagoner* rule as a defense. *See In re PHS*, 581 B.R. at 32 ("If a defendant with no title is found to be a control person, then he is an insider.").

Furthermore, courts consider that "actual management of the Debtor's affairs equals control" in determining insider status. *In re ABC*, 190 B.R. at 675. Courts have defined actual management as control over "the debtor's personnel or contract decisions, production schedules or *accounts payable*." *In re Chas P. Young Co.*, 145 B.R. 131, 137 (Bankr. S.D.N.Y. 1992) (emphasis added). The Second Amended Complaint alleges that "Defendants . . . filed quarterly payroll tax returns which underreported TSE's payroll tax liability during the first, second and third quarters of each of 2012, 2013, and 2014. As a result, TSE was able to 'defer' recognition and payment of those taxes until the fourth quarter of each year, and Tri-State and Cassera would have access to significant amounts of cash in the interim." (Second Amended Complaint ¶ 54.) By allegedly underreporting TSE's payroll tax liabilities, Defendants plausibly reduced the

---

[2] During the hearing on the Motion, Defendants' counsel agreed that if Defendants held corporate titles, they would be considered insiders against whom the motion to dismiss would be denied. "COURT: If Kossoff had the title of CFO, the complaint would withstand the motion to dismiss, correct? CHUBAK: Correct." ("June 25, 2019 Hearing Transcript," ECF Doc. # 26, at 10:11-13.)

accounts payable of TSE on several occasions. Such actions support the conclusion that Defendants indeed exercised a degree of actual management of the Debtor's affairs requisite for a finding of insider status.

Defendants argue the allegations that Defendants exercised total control over TSE's internal accounting functions and acted with autonomy while exerting unfettered influence over decisions that affected the Debtor's finances and operations are entirely conclusory, and therefore not entitled to credit. (Motion ¶ 28.) Defendants cite to case law reaffirming the well-established principle that this Court is not bound to accept conclusory statements as factual allegations. *See*, *e.g.*, *Twombly*, 550 U.S. at 555. However, the Court rejects Defendants' argument that the allegations of Defendants' control in the Second Amended Complaint are impermissibly conclusory.

Rather than submitting a "legal conclusion couched as a factional allegation," *Iqbal*, 556 U.S. at 678, the Trustee has asserted numerous facts that support the contention that Defendants acted as the *de facto* chief financial officer by controlling the accounting and reporting functions of TSE. The Trustee supports these allegations with examples of Defendants' conduct that indicate Defendants exercised control of TSE's accounting and financial functions in the manner expected from a CFO. The Second Amended Complaint alleges that Defendants (1) recorded a year-end intercompany general ledger entry that shifted and later reversed a $67 million federal payroll liability; (2) prepared all federal and state income taxes for TSE, including compiling all the necessary underlying financial information; (3) liaised directly with TSE's outside auditors; and (4) made and back-dated a series of large journal entries during the filing of the TSE bankruptcy. (*Id.* ¶¶ 40-43, 60.) More importantly, they provide case-specific context for the

Court to reasonably infer the plausibility of the other allegations for which Defendants stand accused.

### 3. More Than One Party May Be Considered in Control of the Debtor

Defendants further argue that because the Initial Complaint alleged that Cassera "exerted total control" over TSE and was the "mastermind of the alleged fraud," the allegations in the Second Amended Complaint that "Defendants exercised direct, complete, and virtually exclusive control over the financial reporting systems . . . " are inconsistent and contradictory to the Initial Complaint and should therefore be discarded. (Motion ¶¶ 34-40.) The Trustee does not dispute that Cassera exercised control over TSE by ownership of the business. However, this does not mean that other individuals or entities did not also control key aspects of the business. To the contrary, courts routinely find one party to be an insider, notwithstanding another party's control over a debtor. *See, e.g.*, *In re PHS*, 581 B.R. at 34 (rejecting argument that defendant could not be insider because of CEO's control of the debtor); *In re Bernard L. Madoff*, 458 B.R. at 124 (concluding that complaint adequately alleged defendants in senior management positions were insiders for imputation purposes, notwithstanding defendants' contentions that Bernard Madoff controlled all aspects of the fraud). Similarly, here, although Cassera may have been in total control of TSE, Defendants still could have exercised control over the financial reporting systems and accounting decisions, and acted with complete autonomy.

Therefore, given the early stage of this litigation and the nature of the allegations alleged in the Second Amended Complaint, the Court concludes that the Trustee is entitled to proceed with this case. Defendants dispute many of the facts alleged in the Second Amended Complaint, but a motion to dismiss is not the place to test the veracity of the pleadings.

## IV.   CONCLUSION

Accordingly, the Motion to Dismiss the Second Amended Complaint is **DENIED**. Defendants shall answer the Second Amended Complaint on or before July 22, 2019.

A separate order will be entered scheduling a Case Management Conference. In advance of the conference, counsel for the parties shall confer on the dates to be included in a case management and scheduling order.

**IT IS SO ORDERED.**

Dated:   July 10, 2019
         New York, New York

                                    ___*Martin Glenn*___
                                    MARTIN GLENN
                               United States Bankruptcy Judge